A03A2545. POOLE v. THE STATE.
(596 SE2d 420)

PHIPPS, Judge.
Krystal Poole appeals her convictions for violating the Georgia Controlled Substances Act, contending that the trial court erred in denying her motion to suppress evidence seized from her apartment. We agree and reverse.

In reviewing a trial court's ruling on a motion to suppress, we construe the evidence most favorably to the findings and the judgment.[1] However, the application of the law to undisputed facts is subject to de novo appellate review.[2] In this case, there is no factual

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[2] Id.

dispute. Accordingly, we will conduct a de novo review of the trial court's ruling.

On October 8, 2002, Special Agent James Robinson of the Clayton County Sheriff's Office Drug Enforcement Task Force applied for a warrant to search Poole's apartment. In an affidavit presented to a magistrate, Robinson averred that he believed the following items were located on the premises: "an undetermined quantity of marijuana, photographs and/or videotapes depicting co-conspirators, assets or controlled substances, materials and supplies used to package controlled substances, including plastic bags, wiretwist ties, and razor blades." Robinson set forth the basis of his belief:

> Within the past 72 hours your affiant was contacted by a confidential and reliable informant (CRI) who has requested to remain confidential. Within the past 72 hours prior to the date and time of the affidavit the CRI has been inside the above described residence and observed a quantity of marijuana being stored for sale by a black female. The confidential and reliable informant is familiar with marijuana and it's [sic] various stages of preparation, usage and storage for sale.

Robinson further averred that he had been a law enforcement officer for approximately seven years, that he had been assigned to investigate drug cases during the preceding eighteen months, that he had received advance training in conducting drug investigations, and that he had participated in approximately 125 drug investigations. The magistrate issued a search warrant that same day.

The next day, Robinson and about a dozen other law enforcement officers from Clayton County and Fayette County Drug Enforcement Task Force teams went to Poole's apartment. The leading officer yelled, "sheriff's office, search warrant," and breached the door. Once inside, officers seized less than one gram of cocaine, fifteen and a half grams of marijuana, $200 in cash, scales, a handgun, and ammunition. Poole and another person were inside the apartment and were arrested.

Charged with possessing cocaine, possessing marijuana, and possessing marijuana with the intent to distribute, Poole filed a motion to suppress the items seized. She argued that the evidence was tainted because, among other things, the warrant had been illegally executed. After a hearing, the court denied the motion. Poole was convicted after a bench trial of possessing cocaine and possessing marijuana with the intent to distribute.

1. Where a search warrant is illegally executed, the subsequent

course of events is tainted.[3] Poole maintains that the items seized from her apartment should have been suppressed because the officers failed to comply with OCGA § 17-5-27. That Code section requires a law enforcement officer entering an occupied residence for the purpose of executing a search warrant to give or attempt to give verbal notice of his authority and purpose and permits a forceful entry if the person inside either refuses to admit him or refuses to acknowledge and answer the verbal notice.[4] The notice requirement of that Code section may be dispensed with, however, by a no-knock provision in the warrant or by the presence of exigent circumstances.[5] Exigent circumstances exist where the police have "reasonable grounds to believe that forewarning would either greatly increase their peril or lead to the immediate destruction of the evidence."[6] "A search warrant with a no-knock provision may be issued where the facts set out in the affidavit demonstrate exigent circumstances."[7]

The warrant in this case did not contain a no-knock provision, and Poole maintains that no exigent circumstances excused the officers' forceful entry. The state counters that Robinson's testimony at the suppression hearing showed that events that occurred just before entry constituted exigent circumstances authorizing forceful entry. Robinson, who was the only witness at the suppression hearing, recounted:

> As we approached and agents bailed out of the undercover van, which was unmarked, I noticed and other agents noticed a black female looking out of the window of the apartment. I then basically being the agent, the case agent, let everybody know that someone is looking out their window, we need to step it up and make entry into the apartment. . . . Everybody was marked with sheriff's office or police and had badges on. That individual at the window left the window.

Based on what he had seen, Robinson testified, he had "concerns for the agents making entry. . . . The fact that the individual left the window, the possibility of that individual obtaining a weapon and causing harm to agents making entry, and or getting rid of evidence inside the apartment." The court ruled that the entry without notice

---

[3] *State v. Smith,* 219 Ga. App. 905, 906 (467 SE2d 221) (1996); *Barclay v. State,* 142 Ga. App. 657, 658 (236 SE2d 901) (1977).

[4] OCGA § 17-5-27; *Smith,* supra.

[5] *Smith,* supra.

[6] Id.; see also *Scull v. State,* 122 Ga. App. 696-699 (1) (178 SE2d 720) (1970).

[7] *Smith,* supra.

was lawful, citing the following circumstances: "[the officers] observed someone look out the window and became concerned for their safety should they give the occupants of the residence the opportunity to prepare for their entry."

Applying a Fourth Amendment analysis in *Richards v. Wisconsin*,[8] the United States Supreme Court stated,

> the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.[9]

The Court thus rejected a blanket exception to a knock-and-announce requirement for felony drug investigations because it overgeneralized the risks of danger in drug investigations[10] and because it might be applied to support blanket exceptions to a knock-and-announce rule for other kinds of criminal activity.[11] It announced a standard,

> [i]n order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.[12]

In *Richards*,[13] several law enforcement officers arrived at Richards's hotel room at 3:40 a.m. to execute a search warrant for drugs, based on evidence that Richards was dealing drugs out of his room. One of the officers was dressed as a maintenance man; another wore a police uniform; the remaining ones wore plain clothes. The officer disguised as a maintenance man knocked on the door and stated that he was a maintenance man. With the chain still on the door, Richards cracked it open, at which point he saw the man in police uniform

---

[8] 520 U. S. 385 (117 SC 1416, 137 LE2d 615) (1997).

[9] Id. at 394.

[10] "For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence." Id. at 393.

[11] Id.

[12] Id. at 394.

[13] Id.

behind the "maintenance man." Richards quickly slammed the door closed. A few seconds later, the officers forced entry, discovering cocaine inside. The Court ruled that, because Richards's actions in slamming the door upon seeing the uniformed officer gave the officers a reasonable suspicion that Richards might destroy evidence if given further opportunity to do so, the no-knock entry was justified.[14]

In *Scull v. State*,[15] in considering the officer's failure to comply with the predecessor of OCGA § 17-5-27, this court ruled that circumstances that developed after the warrant was issued excused the officers' entry into the defendant's apartment without first knocking and announcing. Around 2:00 one afternoon, a reliable informant reported to an officer that he had just purchased heroin from two men in that apartment. Within about an hour, the officer had obtained a search warrant, which did not contain a no-knock provision. When the officer returned to his office to pick up his two partners, he received another call from the informer, who had forgotten to tell him during the first call that one of the men had a pistol and had bragged he would not let the "fuzz" take him, that the men made a practice of situating themselves near a sink or toilet while cutting the heroin so that they could dispose of it quickly should the police attempt a forced entry, and that the heroin would be sold that afternoon. With that information, the officer gathered extra officers, headed to the apartment, and entered without announcement. The officer explained, "our primary reason for not knocking is we did not want to get shot, but the secondary was to avoid the suspect from flushing the evidence."[16]

In contrast, in *State v. Smith*,[17] officers who had obtained a warrant to search for drugs at a residence did not subsequently receive any information that would have given them reasonable grounds to believe that forewarning would greatly increase their peril or lead to the immediate destruction of evidence. Upon their arrival at the residence to be searched, they discovered two or three individuals standing outside. The officers did not know whether anyone was inside, but entered without an announcement. This court affirmed the trial court's ruling that the officers' unannounced entry constituted an illegal execution of a warrant that did not contain a no-knock provision.

In this case, the only information received by the officers in immediate proximity to the time the warrant was being executed was

---

[14] Id. at 395.
[15] Supra.
[16] (Punctuation omitted.) Id. at 697.
[17] Supra.

118

that, before they could make an announcement, a person inside the residence had looked out of and then left a window. But there is no evidence that Robinson, who had placed Poole under surveillance,[18] believed that the person who peered through the window was Poole and not some person unconnected with the suspected drug activity. There is no evidence that Poole or the individual who peered through the window had a history of violence or that either had threatened violence if law enforcement officers entered. There is no evidence that Poole had packaged or located the drugs in the apartment for quick disposal. The only reference in the record to harm to the officers or destruction of the evidence is Robinson's testimony regarding a "possibility" of such based only on the fact that someone looked out a window and then left the window. While the reasonableness standard for a forceful entry is "not high,"[19] that testimony is simply inadequate to establish reasonable grounds to believe that, *in this case*, forewarning would have either greatly increased the officers' peril or led to the immediate destruction of the evidence.[20] Moreover, had Robinson, an experienced and trained drug investigator, believed that circumstances *of this case* made it essential for the officers to reach the threshold of Poole's residence undetected, he could have set forth in his affidavit any facts that he believed demonstrated the need for an element of surprise as a necessary precaution in executing the search warrant and sought approval from the neutral magistrate for a no-knock provision. Robinson did not do so.

---

[18] Robinson testified at the suppression hearing that on one occasion, he observed Poole walking out her apartment, getting into cars for short periods of time, and then walking back into her apartment – behavior he considered indicative of selling drugs. On another occasion, he observed Poole walking to the resident manager's office – behavior he did not consider suspicious.

[19] *Cook v. State of Ga.*, 255 Ga. App. 578, 579 (565 SE2d 896) (2002), citing *Richards*, supra at 394-395.

[20] See *Adams v. State*, 201 Ga. App. 12, 14 (3) (410 SE2d 139) (1991) (no-knock provision was erroneously authorized where magistrate included provision because it had become customary to allow such an entry in drug cases, but nothing in the affidavit or in evidence communicated to the magistrate authorized no-knock provision); *Smith*, supra; *Barclay*, supra at 658; compare *Richards*, supra (forceful entry authorized where defendant cracked door open, but then quickly slammed the door upon realizing that officer was standing outside door); *Anderson v. State*, 249 Ga. 132, 136 (5) (287 SE2d 195) (1982) (entry without knocking was authorized where officers had reason to believe that defendant was armed and dangerous); *Cook*, supra at 579-580 (where defendant had been convicted of a violent crime and a drug offense, officers had reasonable belief that defendant could harm them if they entered defendant's residence announced); *Hout v. State*, 190 Ga. App. 700, 701 (1) (380 SE2d 330) (1989) (no-knock provision authorized where officer told magistrate that several people might be in house and firearms would likely be present); *Neal v. State*, 173 Ga. App. 71, 72 (1) (325 SE2d 457) (1984) (no-knock provision authorized where officer told magistrate that defendant kept marijuana packaged in small coin envelopes close by and that packaged marijuana could be flushed down toilet); *Jones v. State*, 127 Ga. App. 137 (1) (193 SE2d 38) (1972) (no-knock provision justified where informants told police that defendant said he would shoot the next officer who entered his residence).

To find exigent circumstances in this case would amount to the adoption of a per se rule that once law enforcement officers realize that an occupant of the premises to be searched for drugs has discovered the officers' presence outside the premises, the notice requirement is excused. In striking an appropriate balance between the legitimate law enforcement concerns and the individual privacy interest affected by a forceful entry, we reject the use of such a blanket exception. Because no exigent circumstances excused the officers' failure to comply with OCGA § 17-5-27, the trial court erred in denying Poole's motion to suppress.

2. In light of our decision in Division 1, we need not address Poole's remaining claims of error.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 4, 2004.

*Scott A. Holt*, for appellant.

*Robert E. Keller, District Attorney, Kathryn O. Pulliam, Assistant District Attorney*, for appellee.