A04A0286. JONES v. THE STATE.
(598 SE2d 366)

BLACKBURN, Presiding Judge.
Following his conviction by a jury of three counts of armed robbery,[1] Kenneth Jones appeals, maintaining that the trial court erred in denying his motion to suppress his custodial statements. For the reasons set forth below, we affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *Tate v. State.*[2]
The evidence introduced at the *Jackson-Denno* hearing shows that in the early morning hours of October 23, 2002, Jones was brought to the criminal investigation division from the jail, where he was being held on unrelated charges, to be questioned about the armed robbery of two women at a motel in Atlanta. Police investigating the robbery had found a credit card belonging to Joleetia Clemons, Jones's girlfriend, in the car stolen from the women. The police had

---

[1] OCGA § 16-8-41.
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

questioned Clemons, who claimed that she had lost the credit card and had reported it lost. When police determined such was not the case, they arrested Clemons and obtained a warrant to search her apartment. In a dumpster outside her apartment, they found a suitcase and jewelry belonging to the victims. The police also learned that Jones, who fit the description of the armed robber, lived with Clemons.

There are two custodial statements at issue in this case. The first statement was that given by Jones when he was brought from the jail on October 23. Asked about the victim's suitcase found in the dumpster by Detective Presnell and Detective Potter, Jones stated that Clemons's oldest son had met a transvestite on the Internet and that the transvestite had come over to their apartment with some suitcases. When they discovered that the person was really a man, Clemons had started beating him and he had fled, leaving the suitcases behind.

After telling the detectives this story, Jones asked for five minutes to think. The detectives left him alone, then returned a few minutes later and asked him what he wanted to do. Jones told them he would tell the truth if they dropped the charges against Clemons. The detectives refused to drop the charges, but agreed to put in a good word for Clemons. After the detectives put their promise in writing, they issued Jones his *Miranda* rights. Jones, who can read and write and had one year of college, waived his rights in writing and told them about his role in the armed robberies at the motel. His statement was reduced to writing.

Detective Presnell testified that no promises were made to Jones, other than the one put in writing, and that no threats were made. Detective Potter denied that the police had threatened to charge Clemons with robbery if Jones did not talk.

Jones's account of this first interview conflicts with that of the police officers. Jones claims that he was interviewed for several hours before giving his statement and that he was not given the *Miranda* warning until minutes before the statement was reduced to writing. He also testified that he told the police about the armed robbery at the motel because he wished to help Clemons and because he was told that he would face only one armed robbery charge rather than one charge for each victim. Jones said that Clemons had been forcefully brought to his interview room, where she was told that she was looking at a 20-year sentence and the loss of her children. Jones said that he thought that if he gave his statement, Clemons would be released and would be able to care for the children.

Clemons testified at the hearing that she was brought to the interview room, where, in front of Jones, she was told that Jones was going to get a life sentence, she was going to get a five-year sentence,

and the children would be placed in state custody. She said she was kept in the hallway ten or fifteen minutes. Detectives Presnell and Potter denied that Clemons was ever in the same room with Jones or brought to the interview room door. They never told Jones that he was going to be charged with only one crime, and never told either Jones or Clemons that they were going to have their children taken from them.

Following his return to the jail, Jones left several messages for Detective Presnell, saying that he wanted to talk with him again and that he had information about other robberies. On October 24, 2002, Detective Presnell brought Jones back for another interview. Detective Presnell once again informed Jones of his *Miranda* rights. Jones waived them, and then gave a second statement in which he described his involvement in three other robberies. At one point, Detective Presnell left the interview room. While he was gone, Jones wrote "This written under duress" on the third page of his statement and initialed it. Detective Presnell did not notice the writing until he copied the statement to turn it over to prosecutors. Detective Presnell testified that Jones had not been under duress, that he did not threaten Jones, and that Jones was very cooperative during the interview.

Jones and Clemons testified that they were taken in the same car to a preliminary hearing for Clemons. Jones said that he asked Detective Presnell if he would receive less time if he gave other information, and Detective Presnell assured him that he would not be charged with any crimes based on the additional information given. Jones said that he would not have given the additional information if he had known that his second statement would result in three more capital offenses. Clemons echoed Jones's testimony, saying that Detective Presnell had told Jones he would be charged with only one robbery and would not get a life sentence. Jones further testified that he had not contacted Detective Presnell to confess to the other three crimes but to report that someone had broken into his apartment, roughed up Clemons's son and put him in a closet, and then had stolen items from the apartment.

Concerning the factual discrepancies between the State's evidence and the evidence presented on behalf of Jones, the trial court held: "After hearing the testimony of the detectives, the defendant and the defendant's girlfriend and after assessing the credibility of those witnesses, the Court finds that the detectives' accounts of events are more logical and therefore more believable." The trial court also made the following findings:

> Regarding allegations that Jones made the first statement to aid his girlfriend after seeing her intimidated by police in an

altercation outside his interview room, the Court finds that no coercive police tactics were used in this case to render Jones' statement involuntary under due process standards. The Court also finds incredible Jones' and Clemons' allegations that police promised he would only face one charge and would not get a life sentence. Accordingly, the Court finds that both statements were made after valid waivers of *Miranda* rights,[3] that police held out no hope of benefit to Jones and that the conditions of the second interview, which Jones initiated, did not constitute duress.

As for the detectives' written promise to put in a good word for Clemons, the trial court held that this promise did "not constitute a hope of benefit to Jones under Georgia law." We agree.

Under OCGA § 24-3-50, for a confession to be admissible, "it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." "The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. The phrase 'hope of benefit' generally means the reward of a lighter sentence." (Footnote omitted.) *Evans v. State.*[4] In addition, "confessions made under a promise of collateral benefit are not for that reason excludable." (Punctuation omitted.) *Johnson v. State.*[5]

In this case, it cannot be said that Jones's statements were induced by hope of benefit in violation of OCGA § 24-3-50. Any benefit to be derived by the hope that the police officers would put in a good word for Clemons was purely collateral. There was no promise of a lighter punishment for Jones. *Riviera v. State*[6] ("[a]ny benefit to be derived by the hope that defendant's wife would not be taken to jail was purely collateral. It did not contemplate the hope of lighter punishment") (citations omitted).

As set forth above,

"[o]n appellate review, factual and credibility determinations by the trial court must be accepted unless such determinations are clearly erroneous. We find as a matter of fact and

---

[3] The trial court also correctly observed that even though it found the detectives' account more credible, it really does not matter which version of events is correct. A defendant's written statement given to the police with the benefit of *Miranda* warnings is not tainted by an earlier oral statement given without the benefit of *Miranda* warnings, where no "coercive tactics were employed in obtaining the prior statement and that both the prior and subsequent statements were voluntary." *Carter v. State*, 249 Ga. App. 354, 355 (1) (548 SE2d 102) (2001).

[4] *Evans v. State*, 248 Ga. App. 99, 101 (2) (545 SE2d 641) (2001).

[5] *Johnson v. State*, 170 Ga. App. 71, 72 (2) (316 SE2d 160) (1984).

[6] *Riviera v. State*, 190 Ga. App. 823, 826 (1) (380 SE2d 353) (1989).

law that the trial court's determination of voluntariness and admissibility, although based upon conflicting evidence, was supported by a preponderance of the evidence."

(Punctuation omitted.) *Manis v. State.*[7]
*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED APRIL 1, 2004.

*Carolyn L. Mabe*, for appellant.
*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Benjamin M. First, Assistant District Attorneys*, for appellee.

---

[7] *Manis v. State*, 235 Ga. App. 789, 790 (2) (510 SE2d 584) (1998).