A06A1599. JACKSON v. THE STATE.
(634 SE2d 846)

BLACKBURN, Presiding Judge.

Following a jury trial on a charge of trafficking in cocaine, Andre Jackson appeals the denial of his motion for a new trial, contending (1) that the trial court erred in denying his motion to suppress evidence police found after failing to properly announce themselves while executing a search warrant, and (2) that the trial court erred in denying his motion to suppress his confession, which Jackson argues was not voluntary. For the reasons that follow, we affirm.

In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts

---

[13] *Davis v. State,* 235 Ga. App. 10, 11 (1) (507 SE2d 827) (1998).
[14] *State v. Sims,* 248 Ga. App. 277, 278 (546 SE2d 47) (2001).

must be accepted unless it is clearly erroneous. Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Citations and punctuation omitted.) *Wesson v. State.*[1]

So viewed, the record shows that after conducting two controlled drug purchases at a residence in College Park, police obtained a "no-knock" warrant to search the residence and arrest the person selling drugs. A SWAT team was assembled to execute the warrant along with narcotics police. As the SWAT team drove into the driveway of the target residence, members of the team saw two or three male occupants standing in an open sliding glass door to the residence. Upon seeing the occupants, the SWAT team turned on its blue lights as officers in marked police cars used the intercom to announce themselves as police with a warrant. The occupants immediately ran back inside the residence, leaving the sliding glass door open. The SWAT team then quickly entered through the open sliding glass door.

Upon entering the residence, the SWAT members secured the occupants of the house, separating two women, one of whom was elderly, and an infant from the five male occupants (including Jackson), who were held in handcuffs. During their search of the residence, police found 28.8 grams of powder cocaine, digital scales, a cocaine cutting agent, and several pieces of crack cocaine. On Jackson's person, police found $1,659 in cash. A pistol and ammunition were found in the garage. After being read a *Miranda* warning and acknowledging that he understood it, Jackson admitted to owning the drugs for the purpose of selling them.

Jackson was charged with trafficking in cocaine.[2] Following his conviction by a jury and the denial of his motion for a new trial, Jackson now appeals.

1. Jackson contends that the trial court erred in not suppressing evidence seized following the police's entry into the residence, because the "no-knock" provision of the warrant was improperly granted. This enumeration is without merit.

Generally, police must make a good faith attempt to verbally announce their authority and purpose before entering a building to execute a search warrant. See OCGA § 17-5-27; *Barclay v. State.*[3] However, a warrant can authorize a "no-knock" entry where police

---

[1] *Wesson v. State*, 279 Ga. App. 428, 431 (2) (631 SE2d 451) (2006).
[2] OCGA § 16-13-31.
[3] *Barclay v. State*, 142 Ga. App. 657, 658 (236 SE2d 901) (1977).

seeking the warrant demonstrate "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." (Punctuation omitted.) *State v. Williams*.[4]

Here, the warrant's "no-knock" provision was authorized by a magistrate in reliance on a general statement in the affidavit that the State at trial conceded was insufficient to authorize a "no-knock" provision in the warrant. See generally *Poole v. State*;[5] *Richards v. Wisconsin*[6] (rejecting blanket no-knock provisions in felony drug investigations absent an evaluation of the particularized circumstances of each case). Instead, the State argued, and the trial court agreed, that exigent circumstances existing at the time the police approached the residence justified their immediate entry.

Exigent "circumstances arise when an officer reasonably believes that a warrantless entry is a necessary response on his part to an emergency situation. Whether these circumstances exist is a question of fact to be determined by the trial court, and the judge's decision, if supported by any evidence, is to be accepted." (Citation and punctuation omitted.) *State v. Merit*.[7]

The trial court based its ruling largely on the fact that when the police drove up to the target residence, several people who were standing in the doorway of the residence saw the police and immediately ran back inside. Three SWAT team members who entered the residence had testified that upon seeing the occupants run back into the house, they immediately announced themselves and pursued the occupants into the house through the open door out of concern that the occupants may become dangerous or destroy evidence.

At the outset, we note that the occupants of the residence observed the SWAT entry team as the team announced its presence and turned on its blue lights in the driveway of the residence. Therefore, additional announcement or delay prior to entry was likely futile.

Furthermore, "[c]ompliance with OCGA § 17-5-27 in the execution of a search warrant is not required where the police have a reasonable, good faith belief that forewarning would increase their peril or lead to the immediate destruction of evidence." *Hunter v. State*.[8] Here, there was testimony from members of the SWAT team that concern for officer safety and the preservation of evidence

---

[4] *State v. Williams*, 275 Ga. App. 612, 614 (621 SE2d 581) (2005).

[5] *Poole v. State*, 266 Ga. App. 113, 116 (1) (596 SE2d 420) (2004).

[6] *Richards v. Wisconsin*, 520 U. S. 385, 394 (II) (117 SC 1416, 137 LE2d 615) (1997).

[7] *State v. Merit*, 262 Ga. App. 687, 688-689 (586 SE2d 393) (2003).

[8] *Hunter v. State*, 198 Ga. App. 41, 44 (2) (400 SE2d 641) (1990).

prompted the team's immediate entry into the residence. In light of the occupants' immediate flight upon seeing police, into a residence where police had recently conducted controlled drug purchases, there was evidence to support the trial court's ruling that the officers had a reasonable belief that the fleeing occupants may retrieve weapons or may destroy evidence. Therefore, the entry was authorized and, once legally inside the residence, the police were authorized to execute the search warrant that led to the discovery of Jackson's involvement in the drug sales at the residence. See *Adams v. State*.[9]

In so ruling, we view this case as distinct from *Poole v. State*, supra, 266 Ga. App. at 116 (1) in which this Court ruled that in a case where an occupant of a house briefly appeared at a window and saw the officers outside the house prior to the search, the officers could not demonstrate exigency on that basis alone. In that case, this Court explained, "[t]o find exigent circumstances in this case would amount to the adoption of a per se rule that once law enforcement officers realize that an occupant of the premises to be searched for drugs has discovered the officers' presence outside the premises, the notice requirement is excused." Id. at 119 (1). Here, however, it is the *immediate flight* of the occupants from an open exterior doorway back into the residence that concerned officers and distinguishes this case. As explained by members of the SWAT team, "by them *running from us*, anything could happen, they could be getting guns. . . . I wouldn't be so concerned if they leave the house or something. But if they go in the house, I don't know if there's guns. . . . We were mainly concerned with the people *running back in* for possible weapons." (Emphasis supplied.) Accordingly, we view the facts of this case as distinct from those in *Poole*. Cf. *Richards v. Wisconsin*, supra, 520 U. S. at 395 (III) (approving a forced unannounced entry where occupant, upon seeing uniformed officer behind a maintenance man at the partially opened door, slammed door closed).

Finally, notwithstanding our ruling that the officers' manner of entry was authorized here, we note that with respect to the Fourth Amendment of the United States Constitution, the United States Supreme Court, in *Hudson v. Michigan*,[10] recently held that the suppression of evidence is not a constitutionally required remedy to police's improper manner of entry pursuant to an otherwise valid search warrant. See *State v. Martin*[11] ("an appellate court applies the law as it exists at the time its opinion is rendered").

---

[9] *Adams v. State*, 201 Ga. App. 12, 14 (3) (410 SE2d 139) (1991).

[10] *Hudson v. Michigan*, ___ U. S. ___ (126 SC 2159, 165 LE2d 56) (2006).

[11] *State v. Martin*, 266 Ga. 244, 245 (1) (466 SE2d 216) (1996).

2. Jackson contends that the trial court erred in not suppressing his confession given at the scene, in that his confession was not voluntary because he gave it based on a hope of benefit. We disagree.

"To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[12] "It is the task of the trial court to determine whether a confession was voluntary, taking into account the totality of the circumstances. We will not disturb the trial court's factual and credibility determinations on appeal unless they are clearly erroneous." (Footnote omitted.) *Bailey v. State.*[13]

Here, at a *Jackson v. Denno*[14] hearing, Jackson testified that when the police entered the residence, they initially detained everyone in the residence including two women related to Jackson. Jackson testified that police initially told him that the women were being charged with crimes connected with the drugs, and that he told police he would "tell them anything" if police did not arrest the two women. Jackson further testified that police told him that if he confessed, the women would not be charged.

In contrast to Jackson's testimony, the arresting officer testified that Jackson offered his confession voluntarily, with no mention of his relatives being made prior to Jackson's confession. The officer further testified that he had already determined that the two women were not involved and would not be charged, and he denied that he made any inducements to Jackson based on the status of the two women.

After considering the evidence presented, the trial court ruled that, based on the totality of the circumstances, Jackson's confession was made voluntarily. In light of the testimony from the police officer that Jackson's confession was not given in reliance on a promise not to arrest the two women, we discern no clear error on the part of the trial court. Moreover, Jackson's own account of the events surrounding his confession does not render the confession involuntary. "The promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. The phrase 'hope of benefit' generally means the reward of a lighter sentence. [Thus], confessions made under a promise of collateral benefit are not for that reason excludable." (Citation and punctuation omitted.) *Jones v. State.*[15] Here, there was no alleged promise to treat Jackson favorably, and any alleged promise of a benefit to

[12] OCGA § 24-3-50.

[13] *Bailey v. State*, 248 Ga. App. 120, 121 (545 SE2d 659) (2001).

[14] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[15] *Jones v. State*, 266 Ga. App. 717, 720 (598 SE2d 366) (2004).

Jackson's relatives was purely collateral to Jackson. See id. Therefore, this enumeration is without merit.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 26, 2006.

*Charles E. Rooks, Carl P. Greenberg*, for appellant.

*Paul L. Howard, Jr., District Attorney, Stephany J. Luttrell, Assistant District Attorney*, for appellee.