**THIRD DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 4, 2023**

# In the Court of Appeals of Georgia

A22A1428. HUGHES v. THE STATE.

DOYLE, Presiding Judge.

Bonnie Hughes was charged, inter alia, with possession of methamphetamine with intent to distribute[1] following the execution of a "no-knock" search warrant. The trial court denied Hughes's motion to suppress, but granted a certificate of immediate review. We granted her application for an interlocutory appeal. For the reasons set forth infra, we reverse the trial court's denial of the motion to suppress.

The record shows the following undisputed facts.[2] Using confidential informants, narcotics officers in Spalding County arranged for two controlled

---

[1] See OCGA § 16-13-30 (b).

[2] See *Poole v. State*, 266 Ga. App. 113, 113-114 (596 SE2d 420) (2004) (reviewing de novo the application of the law to undisputed facts).

purchases of methamphetamine from Hughes at her residence. Following these purchases, a narcotics investigator and deputy sheriff with the Spalding County Sheriff's Office, applied for a search warrant for the residence. In the warrant application and affidavit, the investigator recounted the two controlled purchases and other information indicating that Hughes was selling methamphetamine at her residence, including citizen complaints of methamphetamine use and sales there and the investigator's observation of multiple vehicles arriving at the residence and leaving after a short amount of time.

The investigator also attested that there were surveillance cameras on the corners of the residence; that officers had attempted a "knock and talk" at the residence, but no one answered the door; and that, in the investigator's experience, controlled substances could be sold in various quantities which could be small in size and therefore easily hidden.

The investigator requested a "no-knock" search warrant, stating that there were reasonable grounds to believe that giving verbal notice would greatly increase the peril to officers executing the warrant and lead to the immediate destruction of the evidence sought. In support of this request, the investigator averred:

2

Surveillance camera[s] are set up on the corners of the residence and Bonnie Hughes has been known to move the illegal narcotics on a daily basis. All of which said circumstances leads to a high risk of the contraband suspected of being located within the premises being destroyed or secreted away prior to apprehension if officers are required to knock and announce prior to entry.

The magistrate court granted the request for a no-knock search warrant. Officers searched the home and found methamphetamine, marijuana, plastic baggies, a digital scale, smoking devices, and other paraphernalia. As a result of the search, Hughes was charged with several counts of violating the Georgia Controlled Substances Act.[3]

Hughes filed a motion to suppress the evidence found during the search, arguing that the search warrant was invalid because it contained an improper no-knock provision. The sole evidence provided at the hearing was the search warrant.

Following the hearing, the superior court issued an order denying the motion, stating that "[a]lthough the [c]ourt would prefer that the search warrant contain more specific information supporting its request for a 'no-knock' warrant, the [c]ourt finds

---

[3] See OCGA §§ 16-13-30 (a), (b); 16-13-32.2 (a).

that the affidavit and request in the warrant is particularized and is sufficient to support a no-knock warrant as required by law." This interlocutory appeal followed.

"In reviewing a trial court's ruling on a motion to suppress, we construe the evidence most favorably to the findings and the judgment. However, the application of the law to undisputed facts is subject to de novo appellate review."[4] With these guiding principles in mind, we turn now to Hughes's claim of error.

Hughes argues that the superior court erred in denying her motion to suppress because the no-knock provision in the search warrant was invalid. Specifically, she contends that the no-knock warrant consisted of the investigator's generalized experience, boilerplate language, and a statement that surveillance cameras were set up on the corners of the residence, which are insufficient to support a no-knock warrant.

OCGA § 17-5-27 requires a law enforcement officer entering an occupied residence for the purpose of executing a search warrant to give or attempt to give verbal notice of his authority and purpose, and it permits a forceful entry if the person inside either refuses to admit him or refuses to acknowledge and answer the verbal

---

[4] (Citations omitted.) *Poole*, 266 Ga. App. at 113.

notice.[5] "The notice requirement of [OCGA § 17-5-27] may be dispensed with, however, by a no-knock provision in the warrant or by the presence of exigent circumstances."[6] "A search warrant with a no-knock provision may be issued where the facts set out in the affidavit demonstrate exigent circumstances[,]" which exist "where the police have reasonable grounds to believe that forewarning would either greatly increase their peril or lead to the immediate destruction of the evidence."[7] In other words,

> a warrant can authorize a "no-knock" entry where police seeking the warrant demonstrate a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. But a no-knock provision is permissible only when based on a neutral evaluation of each case's particular facts and circumstances, not on blanket provisions based on generalized experience. The fact that the warrant is issued in a felony drug investigation, standing alone, is insufficient to support a "no-knock" provision. And an affidavit based

---

[5] See *Poole*, 266 Ga. App. at 115 (1).

[6] (Citation omitted.) Id.

[7] (Citation and punctuation omitted.) Id.

5

on the general ease of destruction of drug evidence and an officer's prior experience is insufficient to support a no-knock provision.[8]

"Nonetheless, the standard for establishing the reasonable suspicion necessary to justify a no-knock entry, as opposed to the standard for establishing probable cause, is not high."[9]

In *Poole v. State*,[10] this Court held that a person peeking through a window did not support police entry without a verbal notice.[11] Similarly, in *State v. Smith*,[12] this Court upheld a grant of a motion to suppress where individuals were outside the home when police arrived.[13] The existence of surveillance cameras here has the same effect

---

[8] (Citations and punctuation omitted.) *State v. Barnett*, 314 Ga. App. 17, 18 (722 SE2d 865) (2012), quoting *Jackson v State*, 280 Ga. App. 716, 717-718 (1) (634 SE2d 846) (2006); *State v. Williams*, 275 Ga. App. 612, 615 (621 SE2d 581) (2005) ("[T]he law requires something more than a general knowledge of the usual or expected course of events in [drug] cases — some facts supporting the conclusion that circumstances *of this case* made it essential for the officers to reach the threshold undetected.") (citation and punctuation omitted; emphasis in original).

[9] (Citation and punctuation omitted). *State v. Lopez-Chavez*, 330 Ga. App. 644, 647 (768 SE2d 816) (2015).

[10] 266 Ga. App. 113.

[11] Id. at 117-118 (1).

[12] 219 Ga. App. 905 (467 SE2d 221) (1996).

[13] See id. at 905-906.

6

as peeking through the window or standing outside, in that an individual may be able to see the officers approach. Moreover, there is no evidence that Hughes had a history of violence or had packaged or located the drugs in her residence for quick disposal.[14] An alleged drug dealer inside a location with surveillance cameras, without more, does not show that the defendant is likely to harm police or destroy evidence.[15]

Additionally, the mere fact that a "knock and talk" had unsuccessfully been attempted at the residence at some point does not establish that knocking and announcing during the execution of the search warrant would be dangerous or futile

---

[14] See *State v. Cash*, 316 Ga. App. 324, 327-328 (728 SE2d 918) (2012) (affirming the grant of a motion to suppress a no-knock warrant unsupported by sufficient evidence that suspect was dangerous or had drugs arranged for rapid disposal); compare *Braun v. State*, 324 Ga. App. 242, 244 (1) (a) (747 SE2d 872) (2013) (holding that the defendant's prior arrests for battery and possession of a firearm provided a sufficient basis for the trial court's finding that the inclusion of a no-knock provision in the search warrant was reasonable).

[15] Compare *United States v. Segura-Baltazar*, 448 F3d 1281, 1290-1291 (III) (11th Cir. 2006) (holding that specific evidence of multiple firearms at the residence, along with evidence of recently installed surveillance cameras and monitors designed to see in low-light conditions, provided a reasonable suspicion that knocking would be dangerous or would allow the destruction of evidence).

or would result in the destruction of evidence.[16] Thus, in seeking the warrant, the investigator did not demonstrate a reasonable suspicion to justify a no-knock warrant.

As noted above, in *Poole*, officers approaching a residence to execute a search warrant observed an individual looking out of the window of the residence, who apparently saw the officers coming and then moved away from the window.[17] The search warrant there did not contain a no-knock provision, but the State contended that the circumstance of the individual looking out of the window constituted exigent circumstances authorizing forceful entry.[18] This Court explained that

> the only information received by the officers in immediate proximity to the time the warrant was being executed was that, before they could make an announcement, a person inside the residence had looked out of and then left a window. But there is no evidence that [the officer executing the warrant], who had placed [the defendant] under surveillance, believed that the person who peered through the window was [the defendant] and not some person unconnected with the suspected drug activity. There is no evidence that [the defendant] or the individual who peered through the window had a history of violence or

---

[16] See *Richards v. Wisconsin*, 520 U. S. 385, 394 (II) (117 SCt 1416, 137 LE2d 615) (1997).

[17] See *Poole*, 266 Ga. App. at 115-118 (1).

[18] See id.

8

that either had threatened violence if law enforcement officers entered. There is no evidence that [the defendant] had packaged or located the drugs in the apartment for quick disposal. The only reference in the record of harm to the officers or destruction of the evidence is [the officer's] testimony regarding a "possibility" of such based only on the fact that someone looked out a window and then left the window. While the reasonableness standard for a forceful entry is not high, that testimony is simply inadequate to establish reasonable grounds to believe that, *in this case*, forewarning would have either greatly increased the officers' peril or led to the immediate destruction of the evidence.[19]

Significantly, this Court emphasized that, to find exigent circumstances under the facts of *Poole* "would amount to the adoption of a per se rule that once law enforcement officers realize that an occupant of the premises to be searched for drugs has discovered the officers' presence outside the premises, the notice requirement is excused."[20] This Court declined to adopt such a blanket exception and reversed the trial court's denial of the motion to suppress.[21]

---

[19] (Citations omitted; emphasis in original.) Id. at 117-118 (1).

[20] 266 Ga. App. at 119 (1).

[21] See id.

9

Here, as in *Poole*, the notice requirement was not excused by the mere fact that someone in the residence may have discovered the presence of officers approaching to execute the search warrant.[22] Thus, the no-knock provision in the search warrant was invalid, and the superior court erred in denying the motion to suppress.

The State argues that the presence of the no-knock provision in the search warrant is irrelevant because Hughes did not claim that there was an actual no-knock entry, and she was standing outside her residence and officers gave visual and verbal notice of their purpose and authority prior to entering.[23]

[22] See *Smith*, 219 Ga. App. at 905-906 (holding that there was no evidence of exigent circumstances sufficient to dispense with the general requirement that officers give verbal notice of their authority and purpose, even though when officers arrived at the residence to execute the search warrant, they saw two or three people standing outside); compare *Jackson v. State*, 280 Ga. App. 716, 719 (1) (634 SE2d 846) (2006) ("In light of the occupants' immediate flight upon seeing police, into a residence where police had recently conducted controlled drug purchases, there was evidence to support the trial court's ruling that the officers had a reasonable belief that the fleeing occupants may retrieve weapons or destroy evidence.").

[23] See *State v. Ballew*, 290 Ga. App. 751, 754 (2) (660 SE2d 732) (2008) (holding that where officers' actual entry complied with OCGA § 17-5-27 and was therefore lawful without considering a no-knock provision in a warrant, the search could be upheld and suppression denied); see also OCGA § 17-5-30 (a) (2) ("A defendant aggrieved by an unlawful search and seizure may move the court . . . to suppress as evidence anything so obtained on the grounds that . . . the warrant was *illegally executed*.") (emphasis supplied). But see *Barnett*, 314 Ga. App. at 19 ("An invalid no-knock provision will render the execution of the warrant illegal and support the trial court's grant of a motion to suppress.").

However, nothing in the record indicates that the State raised this argument below or that the superior court considered it.[24] Further, the State concedes that "the record" does not reflect that Hughes was standing in her front yard when officers arrived to execute the search warrant. Indeed, the sole evidence provided at the hearing on the suppression motion was the search warrant. Accordingly, based on our de novo review of the undisputed evidence, the trial court erred in denying Hughes's motion to suppress.

*Judgment reversed. Barnes, P. J. and Senior Appellate Judge Herbert E. Phipps, concur.*

---

[24] Compare *Hourin v. State*, 301 Ga. 835, 845-847 (3) (c) (804 SE2d 388) (2017) (remanding where the trial court failed to consider exigent circumstances and other issues raised by the motion to suppress and the State's response once the court erroneously concluded that officers announcing their presence while simultaneously entering a building was sufficient to satisfy Georgia's knock-and-announce statute).