A89A0327. RIVIERA v. THE STATE.
(380 SE2d 353)

McMURRAY, Presiding Judge.

Defendant was convicted of trafficking in cocaine. He appeals, contending the trial court erred in ruling that an incriminating statement was made voluntarily and that the cocaine was seized pursuant to a valid consent search.

On October 16, 1987, DeKalb County police officers went to an apartment occupied by defendant to execute a search warrant. Arriving at 7:45 p.m., the police found defendant, his wife and two children outside. The police identified themselves and accompanied defendant and his family inside the apartment.

Defendant's wife was introduced as Rosa Sarmentos. Rosa, who spoke broken English, acted as the translator for defendant, who appeared to understand some English but spoke Spanish exclusively.

Defendant sat next to his wife on a living room sofa as the police officers searched the apartment. Unbeknownst to defendant and his family, one of the police officers, Officer Woods, was fluent in Spanish.

Woods heard defendant tell his wife in Spanish that she was to say she knew nothing. The officer also heard defendant make references in Spanish to "the stuff." Moreover, Woods heard defendant praying as the officers continued their search.

Defendant's wife asked Officer Woods in English why the police were searching the apartment. When the officer replied in English that they were looking for cocaine, defendant said he did not know what cocaine was. Defendant's seven-year-old child dissented, stating

in Spanish: "You know, the stuff you put in your nose."

When Officer Woods asked if the family owned any cars, she was told they owned a car and a van, but the car was at a friend's house. Asked if the police could have permission to look in the van, defendant's wife produced a key. The van was searched by a police officer at that time, but nothing was found.

The telephone rang and Officer Woods answered it. A voice on the other end asked for someone named Martha. In Spanish, defendant told his wife to tell the officer that Martha was an old girl friend.

Thereafter, Officer Woods looked in defendant's wife's purse and came across two valid Florida driver's licenses. A picture of defendant's wife was on each one. Although the pictures were the same, the names on the licenses were different. One license bore the name "Rosa Sarmentos"; the other — "Martha Hill." Questioned about the discrepancy, defendant's wife burst into tears, exclaiming that she was in the United States illegally.

Officer Woods told defendant's wife in English that she could be taken to jail for giving a false name. At that point, defendant stood up and said he would show the cocaine to the police if they did not take his wife and kids to jail. The police agreed and defendant led them to the van. Officer Woods stayed behind.

After a short period of time, Officer Woods went outside and saw defendant and the other police officers near the van. At that point, defendant still had not shown the officers the cocaine. Officer Woods approached defendant and told him that she spoke Spanish. Hearing that, defendant showed the officers a toy which was in the van. Inside the toy the officers found a white power subsequently identified as cocaine.

Defendant was led back into the apartment, placed under arrest and advised in Spanish of his *Miranda* rights. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694). After he indicated that he understood his rights, defendant made an incriminating statement in Spanish which Officer Woods translated and transcribed in English. Defendant began making the statement at 10:15 p.m., he finished it at 10:55 p.m. Thereafter, defendant was taken to jail. At that time, he was given a Spanish version of his *Miranda* rights to read. After reading that document, defendant signed a waiver of his *Miranda* rights. The time was 11:30 p.m. *Held*:

1. Defendant contends that his statement that he would show the police the cocaine and the subsequent statement which was translated and transcribed by Officer Woods were inadmissible in evidence. In this regard, he argues that he was not given a *Miranda* (*Miranda v. Arizona*, 384 U. S. 436, 444, supra) warning before making either statement. We disagree.

"It is settled that the safeguards prescribed by *Miranda* become

applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.' [Cit.]" *Berkemer v. McCarty*, 468 U. S. 420, 440 (104 SC 3138, 82 LE2d 317). Short of that point, *Miranda* warnings need not be given. *Wilburn v. State*, 230 Ga. 675, 679 (2) (198 SE2d 857). As it is said: "For *Miranda* to apply a person must be taken into custody or otherwise deprived of his freedom of action in some significant way." *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799).

In the case sub judice, defendant had not yet been arrested when he stated he would show the police where the cocaine was hidden — he was simply being detained pending the execution of the search warrant. See OCGA § 17-5-28 which provides that an officer executing a search warrant may reasonably "detain" any person in the place being searched to protect himself or to prevent the disposal or concealment of items described in the search warrant. Compare *Orozco v. Texas*, 394 U. S. 324 (89 SC 1095, 22 LE2d 311), in which a murder suspect's Fifth Amendment rights were violated when he was questioned in his bedroom by police and was "under arrest" as soon as he gave his name. It follows, in the case sub judice, that it was not incumbent upon the police to advise defendant of his *Miranda* rights before he made the statement that he would show the police the whereabouts of the cocaine. See generally *Humphrey v. State*, 174 Ga. App. 165, 166 (2) (329 SE2d 306).

With regard to the incriminating statement which was translated and transcribed by Officer Woods, the evidence is clear (and the trial court found) that after he was arrested defendant was orally given his *Miranda* rights in Spanish, that he indicated he understood those rights, and that that *Miranda* warning preceded the statement made by defendant. The mere fact that defendant signed a waiver of his *Miranda* rights subsequently (after he was taken to jail) did not invalidate the prior oral warning. It cannot be said, therefore, that defendant was not advised of his *Miranda* rights before making the statement which Officer Woods translated and transcribed.

Defendant also argues that the statements were not made voluntarily, having been induced by the threat that defendant's wife could be taken to jail and the ultimate promise that she would not be taken to jail. See in this connection OCGA § 24-3-50 which provides: "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."

Defendant's statements were not induced by a threat made to defendant's wife in violation of OCGA § 24-3-50. On the contrary, when Officer Woods informed defendant's wife that she was subject to arrest for giving a false name, she was merely stating a "truism." (Having come across two valid driver's licenses with pictures of defend-

ant's wife and two different names, the officer did not know which name was legitimate.) Accordingly, OCGA § 24-3-50 is inapplicable. *Copeland v. State,* 162 Ga. App. 398, 400 (291 SE2d 560). See *Robinson v. State,* 180 Ga. App. 43, 51 (6) (348 SE2d 662), reversed on other grounds in 256 Ga. 564 (350 SE2d 464).

Likewise, it cannot be said that defendant's statements were induced by hope of benefit in violation of OCGA § 24-3-50. Any benefit to be derived by the hope that defendant's wife would not be taken to jail was purely collateral. See *Patrick v. State,* 169 Ga. App. 302 (312 SE2d 385), affirmed in 252 Ga. 509 (314 SE2d 909). It did not contemplate the hope of lighter punishment. See *Wesley v. State,* 177 Ga. App. 877, 879 (4), 880 (341 SE2d 507). And it did not, therefore, render the statements inadmissible. OCGA § 24-3-51.

The trial court did not err in ruling that the incriminating statements made by defendant were voluntary and admissible. Defendant's arguments to the contrary are not meritorious.

2. Defendant asserts the motion to suppress should have been granted because the search of the van was not within the curtilage of the apartment. See *United States v. Stanley,* 597 F2d 866 (4th Cir. 1979). This assertion misses the mark. The police did not search the van under the aegis of a warrant. Rather, they searched the van with the consent of defendant. And that consent was given freely and voluntarily. It cannot be said, therefore, that the search of the van was invalid. *Lombardo v. State,* 187 Ga. App. 440, 441 (3) (370 SE2d 503); *Mayfield v. State,* 186 Ga. App. 233 (366 SE2d 836).

Relying upon *Radowick v. State,* 145 Ga. App. 231 (244 SE2d 346), defendant also argues that the consent to search the van was obtained by coercion because he was detained "an inordinate period of time." Id. at 242. We disagree. Under the circumstances of this case, we find the duration of the search and defendant's detention to be reasonable. See OCGA § 17-5-28. After all, cocaine is a substance which is concealed easily. It cannot be said that a two-and-a-half hour search for such a substance in an apartment is unreasonable on its face.

The trial court did not err in denying defendant's motion to suppress evidence.

*Judgment affirmed. Carley, C. J., and Beasley, J., concur.*

DECIDED MARCH 17, 1989.

*J. M. Raffauf,* for appellant.

*Robert E. Wilson, District Attorney, Robert M. Coker, Fran Shoenthal, Assistant District Attorneys,* for appellee.