A00A0129. WHITE et al. v. TRAINO.
(535 SE2d 275)

SMITH, Judge.

Three occupants of a residence that was searched pursuant to a lawful warrant alleged various tort claims against Captain Russell Traino of the Columbus Police Department, the officer who supervised the drug raid. Roberto C. White III (hereinafter "White"), his wife, Dessie R. White, and their 12-year-old son, Kelvin White, brought suit solely against Captain Traino individually. The Whites' complaint asserted claims for several intentional torts purportedly perpetrated by Traino, including an alleged assault and battery of White, an alleged assault and illegal search of a purse belonging to Dessie White, an alleged assault and battery of Kelvin White, and the false imprisonment of all three plaintiffs. The trial court determined that Traino was entitled to summary judgment, and we agree.

Traino sought summary judgment on several grounds: official immunity in the absence of evidence of actual malice, the lawful execution of a warrant under OCGA § 17-5-28, the inapplicability of the doctrine of respondeat superior, and an assertion that OCGA § 17-5-

foreclosed the claims for false imprisonment. Without reciting the basis for doing so, the trial court awarded summary judgment to Traino.

In their sole enumeration of error, the Whites assert that summary judgment was precluded by their deposition testimony. They claim that a jury must resolve whether Traino exceeded the scope of the warrant, unlawfully searched and detained them, and committed other torts. The evidence, including the testimony of the Whites, belies these assertions.

When viewed in a light most favorable to the nonmovant, the evidence showed that a confidential informant disclosed to police that Roberto White IV and Jeremiah Hill were selling cocaine from this residence.[1] The warrant issued by the magistrate authorized a search for the younger White, a resident of the household, and for a quantity of crack cocaine. The warrant expressly authorized police to conduct a diligent search of the premises "AND OF THE PERSONS FOUND THEREIN OR THEREON FOR SAID (Property) (Person) ABOVE DESCRIBED."

Under Traino's supervision, drug agents entered the residence of the Whites pursuant to a lawful and valid warrant, a fact conceded by the appellants. At the time of the entry by members of the task force, seven persons were present inside the house. While executing the warrant, agents discovered and confiscated crack cocaine. Roberto White IV and Hill were found inside the premises, arrested, and prosecuted.

Traino testified that he did not direct, sanction, or participate in any assault or battery on the Whites. Traino testified that he did not point a pistol or otherwise threaten any of them. He explained that any handcuffing "was done merely to control Plaintiffs and to secure the scene and to ensure the safety of all persons in the house."

Traino's testimony was corroborated by two other officers involved in the drug raid. Sergeant James Price explained that in executing a warrant, drug agents often encounter armed drug dealers and weapons. Price explained that in carrying out a high risk warrant, like the one here, it is standard practice to "handcuff anybody that could be a threat" to ensure the safety of the officers. According to Price, the agents gained entry through a ploy, then entered with their weapons drawn "in a ready position." Price specifically recalled that White acted "highly upset" and "real irate." Price testified Traino made repeated efforts to calm White down and to encourage him to remain seated, but he "kept coming up off the couch."

---

[1] Roberto White IV is the adult son of Roberto White III.

Agent Dechon Grant, who during the search did not leave the room where White and Dessie White were located, recalled that in order to subdue White, who was "very loud" and "very upset," he personally had to handcuff him briefly. Dessie White, however, cooperated fully and was not placed in handcuffs. Grant attested that "Captain Traino never restrained [White], he never touched him. I was the only person to handcuff and touch Mr. Roberto White." Grant further testified that he did not point his pistol at anyone and he never saw any agent do so either.

After Traino offered evidence supporting his motion for summary judgment, the Whites could no longer rest on their pleadings but were required to produce specific evidence to demonstrate the existence of disputed material facts. *Bob v. Hardy*, 222 Ga. App. 550, 554 (4) (474 SE2d 658) (1996). They failed to do so. In fact, their own testimony undermines their tort claims. Dessie White described her husband as "hysterical," and she testified that he was not handcuffed until after he got up off the floor and refused to be quiet. She confirmed that she was never handcuffed or touched by any of the officers. She testified that she never saw Traino with a pistol and denied sustaining any physical injuries. She also stated that Traino never spoke with her at all that night.

White admitted that Traino neither handcuffed him nor pointed a pistol at him. White conceded that he had not been struck or hit, claiming only "I was manually handled rough and put a knee in my back and forced to the ground." The only instruction White recalled Traino giving was to check every room.

Kelvin White testified that the only time a pistol was pointed at him was after he heard the shouts of "drug raid" and proceeded from his brother's bedroom toward the den as the officers were entering. He testified that no one ever put a gun to his head or threatened to hurt or shoot him. Kelvin expressly testified that Captain Traino did not point a gun at him. He estimated that he remained in handcuffs for about eight or ten minutes. He denied being manhandled or threatened. Although claiming his wrists were "kind of scratched up with the marks" because the handcuffs were tight, he did not seek or receive any medical attention.

All three plaintiffs denied knowing that their home was being used to store cocaine and crack cocaine.

All the tort claims at issue allegedly arose during the execution of a lawful search warrant. OCGA § 17-5-28, however, authorizes the detention and search of persons on the premises in certain circumstances:

In the execution of the search warrant the officer executing

the same may reasonably detain or search any person in the place at the time:

(1) To protect himself from attack; or

(2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant.

False imprisonment requires, among other things, an unlawful detention. OCGA § 51-7-20; *Williams v. Smith*, 179 Ga. App. 712, 714 (2) (348 SE2d 50) (1986). Here, since the Whites were being detained briefly pending the execution of a lawful search warrant and the securing of the premises, no claim for false imprisonment exists. See *Riviera v. State*, 190 Ga. App. 823, 825 (1) (380 SE2d 353) (1989). Cocaine, we have noted, is a substance which is easily concealed and may require some time to discover. See id. at 826 (2). As in *Riviera*, the duration of the search and the detention was reasonable under the circumstances. Id.

While supervising the execution of the search warrant, Traino was exercising a discretionary function. See *Bell v. City of Albany*, 210 Ga. App. 371, 373, n. 2 (436 SE2d 87) (1993). "Absent evidence of malice, wilfulness, or corruption, a public officer is afforded immunity from liability to those who may be injured by the exercise of his discretion in the performance of his official duties. [Cit.]" *McDay v. City of Atlanta*, 204 Ga. App. 621, 622 (2) (420 SE2d 75) (1992). Moreover, Traino was entitled to qualified immunity for the use of any physical force provided that such force was "objectively reasonable" under the circumstances. *Bell*, supra at 375. But here, we need not inquire into the objective reasonableness of Traino's actions because no evidence was offered that Traino ever used any physical force at all. Compare *Gardner v. Rogers*, 224 Ga. App. 165, 168 (1) (480 SE2d 217) (1996) (qualified immunity defense inapplicable when officer uses excessive force or engages in brutality).

Further, absent evidence of actual malice, Traino was entitled to immunity for the performance of his official discretionary duties even if performed negligently. *Gilbert v. Richardson*, 264 Ga. 744, 753 (6) (452 SE2d 476) (1994). In this context, "actual malice" means a deliberate intention to do wrong. *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996). Since the record is devoid of any evidence that Traino acted with actual malice in the performance of his duties, he was entitled to summary judgment. Id. at 392 (3); see *Adams v. Hazelwood*, 271 Ga. 414, 415 (2) (520 SE2d 896) (1999).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MAY 26, 2000 ▮▮▮▮▮

*Michael E. Garner*, for appellants.
*Frank K. Martin, Eugene H. Polleys, Jr.*, for appellee.