A07A2348. ROBBINS v. THE STATE.
(659 SE2d 628)

MIKELL, Judge.

A Paulding County jury found Larry Alan Robbins guilty of two counts of child molestation and two counts of aggravated sodomy.[1] On appeal, Robbins claims that the trial court erred (i) in denying his

---

[1] The jury also found Robbins guilty of two counts of aggravated child molestation which the trial court merged into the two counts of aggravated sodomy for purposes of sentencing.

motion for a directed verdict, (ii) in denying his motion for a continuance, (iii) in denying his motion to suppress his custodial statement, and (iv) in denying his motion for new trial on grounds of ineffective assistance of trial counsel. For the reasons which follow, we disagree and affirm.

Viewed in a light most favorable to the jury's verdict, the evidence shows that Robbins was the stepfather of M. H., a seven-year-old girl. Robbins's wife testified that on May 4, 2006, M. H. complained to her mother of stomach pain which "started hurting when Alan got off of me." M. H. told her mother that Robbins had been on her and had "poked [her] with his private." After Robbins's wife suggested to M. H. that it had happened accidentally, M. H. responded that Robbins' "private" was "what I been feeling in the feeling game." M. H. explained that in the feeling game, which they played on several occasions, Robbins would blindfold her and put something in her hand and make her feel it. M. H. told her mother that what she felt had a hole in the end, that it was a little bit hard and a little bit soft, that it was a little bigger in the end, and that it was wet around the hole. The child also described the object as having one bump. According to Robbins's wife, Robbins's penis has a bump in the middle, which she characterized as a mole or a skin tag.

M. H. also told her mother that she played the "tasting" game with Robbins. In this game, Robbins blindfolded the child and told her he was going to put flavors on his thumb. However, the object that M. H. tasted was bigger than Robbins's thumb, had a hole in one end, and tasted like peanut butter, olive oil, and on one occasion like "pee."

Robbins's wife decided to talk to her husband before calling the police. She confronted Robbins when he came home and asked him about the feeling game. He admitted his involvement, initially maintaining that it was an accident and then blaming his wife because he had not been touched in a while. The following morning Robbins's wife told her husband that they could stay together if he would move in with his parents, but that he would have to tell his parents what he did to M. H. They went to Robbins's parents' home, where he told his parents that he let M. H. feel his "private." Robbins's wife insisted that Robbins also tell his parents about the tasting game in which he put peanut butter and olive oil on his penis. He admitted that this was true.

That afternoon Robbins's wife took M. H. to be interviewed by a forensic specialist outside the mother's presence. According to the interviewer, who testified at trial as an expert in the field of forensic interviews, M. H. did not appear to have been coached. A videotape of the interview with M. H. was introduced into evidence and played for the jury. The videotape shows that M. H. told the interviewer that she

played the "feeling" game and the "taste" game with Robbins. According to M. H., during the feeling game, which they played more than one time, Robbins would take M. H. into her mother's bedroom and place her head under the covers. Robbins would place something in her hand and ask her to guess what it was. M. H. described the object as squishy and hard with a hole in the top. During the taste game, Robbins would blindfold the child. According to M. H., she licked peanut butter and "olive juice" on Robbins's "private."

At about the same time as M. H.'s forensic interview, an investigator interviewed Robbins at the offices of the Paulding County Sheriff. The investigator informed Robbins of his *Miranda* rights, and Robbins did not thereafter insist on his right to counsel. A videotape of the interview with Robbins was admitted into evidence and played for the jury. During the interview, Robbins told the officer that he and M. H. had played a "touchy-feely" game in which M. H. wanted to be blindfolded. He admitted that he and the child had wrestled around while he had on his briefs, and that at one point M. H. saw his penis. He also admitted that he and M. H. had been involved in a "taste test thing," and that she had licked his penis twice.

1. In light of the evidence, including Robbins's admissions to his wife, his parents, and to the police investigator, any rational trier of fact could have found him guilty beyond a reasonable doubt of the crimes of which he was found guilty and sentenced.[2] It follows that the trial court did not err in denying his motion for a directed verdict of acquittal.[3]

2. Robbins claims that the trial court erred in denying his motions for a continuance. We disagree.

Defense counsel moved for continuance on the first day of trial, a Monday, representing that he had gotten most of the discovery in the case the weekend before the last weekend, and that it was only until the immediately preceding weekend that he had the chance to go through some of the discovery documents with Robbins. According to counsel, he was not ready to proceed "until I have an expert look at this stuff and tell me whether he is going to be able to help me." Counsel also maintained that he needed additional time to investigate four or five persons listed in the discovery material who had not previously come to his attention, although he could not identify the names of these persons when asked to do so by the trial court. Further

---

[2] OCGA §§ 16-6-2 (a) (1), (2); 16-6-4 (a).

[3] See *Williams v. State*, 237 Ga. App. 814, 815 (1) (515 SE2d 875) (1999) (standard for reviewing a denial of a motion for a directed verdict of acquittal is whether evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense).

discussion showed that "part of the problem . . . is that I got this case and went on two weeks' vacation." The defense attorney had arranged for other counsel to handle the bond hearing, and some of the discovery was mailed to that counsel's old address, who did not file a change of address form because "he didn't think he was on the case." The trial court confirmed that trial counsel had received the discovery "the weekend before this last one," and then denied the motion for continuance.

The next morning, before resuming voir dire, defense counsel represented that he had located a psychological expert and asked for a three-day continuance, arguing that his expert needed time to interview Robbins and review the videotaped statements. The trial court denied the motion. During the trial, the defense presented the testimony of a psychologist who had interviewed Robbins, viewed the videotape of Robbins' police interview, and who opined that Robbins was susceptible to being manipulated into a false confession.

> All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require. Further, trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.[4]

The record shows that defense counsel had more than a week before trial to review the state's discovery, had reviewed the material with his client, and had also had time before trial to hire an expert. Under the circumstances, we cannot conclude that Robbins's grounds for continuance were compelling.[5] Unlike *Smith v. Greek*,[6] and *Tucker v. State*,[7] relied on by Robbins, defense counsel in this case was not assigned or hired so close to trial that defense counsel could not prepare a defense. Robbins hired his defense counsel in May, several months before the August trial date. Further, it appears that the delay in counsel's receipt of the discovery material was attributable to defense counsel's failure to ensure the state had his correct mailing

---

[4] (Citations and punctuation omitted.) *Hartley v. State*, 283 Ga. App. 388, 389 (1) (641 SE2d 607) (2007).

[5] See *Hall v. State*, 240 Ga. App. 356, 358 (4) (523 SE2d 409) (1999) (trial court did not abuse its discretion in denying defendant's motion for a continuance to allow defense counsel more time to prepare for trial).

[6] 226 Ga. 312, 317 (175 SE2d 1) (1970).

[7] 136 Ga. App. 456, 456-459 (1) (221 SE2d 664) (1975).

address. "In all cases, the party making an application for a continuance must show that he has used due diligence."[8] Accordingly, we conclude that the trial court did not abuse its discretion in denying Robbins's motion for a continuance.

3. Robbins also claims that the trial court erred in denying his motion to suppress his statement to the police investigator because the statement was obtained "through hope of benefit and promise of reward through the actions of a law enforcement officer."

> The state bears the burden of showing the voluntariness of a statement by a preponderance of the evidence. Factual and credibility determinations made by a trial judge after a voluntariness hearing must be accepted by appellate courts unless such determinations are clearly erroneous.[9]

Evidence presented at the *Jackson-Denno* hearing showed that Robbins was interviewed by a Paulding County Sheriff's Office investigator. The state presented the investigator's testimony, and the videotape of the investigator's interview with Robbins was played for the trial court. According to the investigator, Robbins went to the interview voluntarily and was not placed under arrest until the conclusion of the interview. The investigator informed Robbins of his *Miranda* rights, Robbins signed a *Miranda* waiver form, and at no time during the interview did he ask for an attorney. The investigator testified that he offered no hope of a benefit in order to get Robbins's statement. According to the investigator, Robbins's wife was a POST-certified probation officer with the City of Douglasville. She disclosed to the investigator the information she had received from Robbins and that she had told Robbins that she would not leave him if he gave a statement to the investigator.

Although Robbins contends that his confession to the police investigator was not freely and voluntarily given because his "police/wife" promised the benefit of no divorce if he gave the statement, the fact that Robbins was married to a law enforcement officer has little relevance under the facts of this case. Robbins's initial confession to his wife was not made in police custody nor was she present during his interview with the police investigator, which is the statement at issue here. Furthermore, the trial court was authorized to conclude that Robbins's wife was acting as a wife and mother, and not an agent of

---

[8] OCGA § 17-8-20. See also *Davis v. State*, 204 Ga. App. 657, 658 (4) (420 SE2d 349) (1992) ("[n]othing in our law either requires or permits defendants to rely solely on information provided by the State for their pretrial investigation, and before they are entitled to continuance, they must show the exercise of due diligence") (citation omitted).

[9] (Footnotes omitted.) *Davenport v. State*, 277 Ga. App. 758, 760 (1) (627 SE2d 133) (2006).

the state, when she asked Robbins about his interaction with her daughter and subsequently encouraged Robbins to confess.[10] "Numerous cases hold that *Miranda* is not implicated when a suspect in custody is questioned or encouraged to confess by a father, mother, wife, or girl friend."[11] Thus, notwithstanding that Robbins's wife was a law enforcement officer, and pretermitting whether he gave a statement while in custody, his statement was not made under governmental coercion and is not inadmissible for that reason.

Robbins also complains that his statement was not voluntary because it was made through "the hope of no divorce." OCGA § 24-3-50 provides that "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." A governmental actor is not required for a confession to be involuntary for purposes of this statute.[12] Nevertheless, "[t]he phrase 'hope of benefit' generally means the reward of a lighter sentence. Thus, confessions made under a promise of collateral benefit are not for that reason excludable."[13] We conclude that Robbins's wife's promise not to divorce her husband, which did not bear on the question of punishment, was a promise of collateral benefit.[14] It follows that the trial court did not err in finding Robbins's statement to be voluntary and in denying the motion to suppress.

4. Robbins further claims that he received ineffective assistance of trial counsel.

> In order to prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption

---

[10] See, e.g., *Cook v. State*, 270 Ga. 820, 827 (2) (514 SE2d 657) (1999) (it is a case-by-case basis determination whether law enforcement family member was acting as agent of the state when speaking with arrested family member).

[11] (Citations omitted.) Id. at 826 (2).

[12] *Griffin v. State*, 230 Ga. App. 318, 320 (496 SE2d 480) (1998).

[13] (Citation, punctuation and footnote omitted.) *Jackson v. State*, 280 Ga. App. 716, 720 (2) (634 SE2d 846) (2006).

[14] *Pasuer v. State*, 271 Ga. App. 259, 261-262 (1) (609 SE2d 193) (2005) ("hope of benefit" does not refer to a reduction in bond); *Frei v. State*, 252 Ga. App. 535, 537-538 (2) (b) (557 SE2d 49) (2001) (letting district attorney know of defendant's cooperation not hope of benefit); *Tucker v. State*, 231 Ga. App. 210, 214 (1) (c) (498 SE2d 774) (1998) (informing judge of defendant's cooperation not hope of benefit); *Burton v. State*, 212 Ga. App. 100, 102 (2) (441 SE2d 470) (1994) (statement to the accused that substance abuse counseling was available was an offer of a collateral benefit); *Riviera v. State*, 190 Ga. App. 823, 826 (1) (380 SE2d 353) (1989) (benefit to be derived by the hope that defendant's wife would not be taken to jail was purely collateral).

that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.[15]

In addition, the combined effects of counsel's errors should be considered together as one issue with regard to the prejudice test.[16]

(a) Robbins contends that his defense counsel was ineffective in failing to file a pre-trial motion or demurrer to require the state to identify the specific date and time of the charged incidents. During the hearing on motion for new trial, Robbins's trial counsel testified that making the state narrow the range of time in which the crime is alleged to have occurred was important, but that he failed to demur to the indictment on that account.

The indictment accused Robbins of committing crimes against M. H. between "December, 2005 and the 5th day of May, 2006 inclusive," and did not allege that the date of the offense was material. As a rule, "if an indictment alleges that a crime occurred between two particular dates, and if evidence presented to the trial court shows that the State can reasonably narrow the range of dates during which the crime is alleged to have occurred, the indictment is subject to a special demurrer."[17] Here, the charges were based on the recollections of a seven-year-old child, and Robbins does not show how the state could have reasonably narrowed the dates alleged in the indictment. Further, Robbins does not demonstrate that the length of the period in which the indictment alleged the crimes were committed materially affected his ability to present a defense, which did not rely on an alibi or other time sensitive claim. Thus, even if the indictment was subject to a special demurrer, Robbins failed to demonstrate a reasonable likelihood that, but for defense counsel's failure to demur to the indictment, the outcome of the trial would have differed.[18]

---

[15] (Citation omitted.) *Glidewell v. State*, 279 Ga. App. 114, 121 (7) (630 SE2d 621) (2006) (whole court).

[16] *Schofield v. Holsey*, 281 Ga. 809, 811 (II), n. 1 (642 SE2d 56) (2007).

[17] *State v. Layman*, 279 Ga. 340, 341 (613 SE2d 639) (2005). We note that "the State is not restricted at trial to proving that an offense occurred on the date alleged in the indictment when the indictment does not specifically allege that the date of the offense is material." (Footnote omitted.) Id.

[18] *Berman v. State*, 279 Ga. App. 867, 872 (6) (632 SE2d 757) (2006) (ineffective assistance of counsel claim was without merit because appellant did not establish that a special demurrer would have been successful or that counsel's failure to file such pleading before trial affected the outcome of the proceedings).

(b) Robbins claims that his trial counsel was ineffective in failing to hire an expert to rebut the state's forensic expert regarding techniques employed in the interview of M. H. But he fails to show there was anything improper as to those interviewing techniques. It is simply a matter of speculation as to whether Robbins's trial counsel could have presented expert testimony favorable to the defense on this issue. "Absent a proffer of what the testimony of his expert would have been at trial, [Robbins] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course."[19]

(c) Robbins claims his trial counsel was ineffective in failing to prepare any voir dire questions regarding publicity and pre-trial contamination of the jurors. According to trial counsel's testimony, M. H.'s mother was on television a couple of nights in a row and there were newspaper articles about the case. Counsel testified that he could not recall if he examined the jurors during voir dire concerning pre-trial publicity, although he maintained "that's something you have to get into." However, the court reporter did not take down all of voir dire, and so the record does not show whether trial counsel did or did not ask the venire about pre-trial publicity. Nor does the record show whether the pre-trial publicity was incorrect or inflammatory.[20] Thus, Robbins does not show that his trial counsel's performance was deficient in addressing the impact of pre-trial publicity on the jury or whether, if deficient, Robbins was prejudiced thereby.

(d) Robbins argues that his trial counsel was ineffective in failing to ask the trial court to review M. H.'s taped interview for indicia of its reliability. According to trial counsel's testimony, such a motion needed to be made, he did not prepare the motion, and the reason he did not do so was the lack of time.

M. H.'s out-of-court statements were admissible if, among other things, the trial court found "that the circumstances of the statement provide sufficient indicia of reliability."[21]

> There is no requirement that the trial court make a specific finding of sufficient indicia of reliability for out-of-court statements of a child victim to be admissible. The statutory

---

[19] (Citations and footnotes omitted.) *Madge v. State*, 245 Ga. App. 848, 851 (3) (a) (538 SE2d 907) (2000).

[20] See *Williams v. State*, 277 Ga. 853, 858 (6) (d) (596 SE2d 597) (2004) (in assessing impact of pre-trial publicity on jury, no prejudice was shown on account of trial counsel's failure to seek a change of venue where among other things, record did not demonstrate publicity was incorrect or inflammatory).

[21] OCGA § 24-3-16.

requirement is met if, after both parties have rested, the record contains evidence which would support such a finding.[22]

M. H.'s videotaped statement contained numerous indicia of its reliability.[23] Among other things, M. H. was interviewed at a neutral location outside the presence of her mother,[24] she did not give the interview under any threat of punishment or promise of reward,[25] and an expert testified that M. H. did not appear to be coached.[26] M. H.'s videotaped statements were consistent with the evidence of her other out-of-court statements.[27] They were also consistent with Robbins's statement to his wife, his parents, and the police investigator.

In ruling on Robbins's motion for new trial, the trial court indicated that it stood by its rulings as to the admission of child hearsay. To the extent trial counsel failed to specifically challenge the admission of M. H.'s videotaped statement on the grounds that it contained insufficient indicia of reliability, Robbins does not show that such a motion would have had any merit. "Failing to file a futile or meritless motion cannot amount to ineffective assistance."[28]

(e) Robbins claims his trial counsel was ineffective because he failed to call M. H. as a witness or to attempt to interview the child before trial. We disagree.

Defense counsel testified at the hearing on motion for new trial that he did not call M. H. as a witness and therefore had no opportunity to cross-examine the child because "I didn't think of it."

---

[22] (Footnotes omitted.) *Ingram v. State*, 262 Ga. App. 304, 306 (2) (585 SE2d 211) (2003).

[23] Indicia of reliability which trial court may consider include:
(1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present . . . ); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.
(Citations and emphasis omitted.) *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

[24] See *Howard v. State*, 252 Ga. App. 465, 467 (1) (556 SE2d 536) (2001) (neutral location with one person present, the interviewer).

[25] See *Revells v. State*, 283 Ga. App. 59, 70 (6) (a) (640 SE2d 587) (2006) (no promises or threats).

[26] See *In the Interest of K. C.*, 258 Ga. App. 363, 365 (1) (a) (574 SE2d 413) (2002) (lack of coaching).

[27] *Mikell v. State*, 281 Ga. App. 739, 745 (4) (b) (637 SE2d 142) (2006) (consistent statements).

[28] (Citation omitted.) *Moon v. State*, 286 Ga. App. 360, 363 (2) (a) (649 SE2d 355) (2007).

Counsel also testified that neither he nor a defense investigator talked to the child before trial and indicated that this was an error on his part. On cross-examination, defense counsel admitted that in his career he had handled over 30 but less than 100 child molestation cases. When asked how many times the victim's parents allowed him to interview the child before trial, defense counsel responded, "It's rare." Defense counsel also indicated that he had called only six children to the stand in the past eight or ten years, and that his trial strategy in this case was to attack the child's credibility through the mother.

"[T]he decision as to which defense witnesses will be called is a matter of trial strategy and tactics, and tactical errors do not constitute ineffective assistance of counsel."[29] Trial counsel's performance is deficient if shown to fall "below an objective standard of reasonableness."[30] The theory of the defense was that M. H., whose sight was obstructed during the feeling and tasting games, came to the conclusion that she had contacted Robbins's "private" because that is what her mother told her. For example, defense counsel argued in closing that the mother was a liar, and "we know it because even [M. H.], bless her heart, said I know that's what it was because mama told me daddy told her. Mama told me Alan told her." The defense did not need to discredit M. H. in order to advance their theory of the case. It follows that trial counsel's failure to call M. H. as a witness was not objectively unreasonable and therefore not deficient performance.[31] As to defense counsel's failure to pursue a pre-trial interview with M. H., which evidence showed to be a rarely successful undertaking in the context of a child victim, Robbins did not show that his counsel's performance in this respect, even if deficient, was prejudicial.

(f) Robbins contends that his trial counsel was ineffective because he failed to interview the persons to whom M. H. told her story in order to ascertain if there were discrepancies in the child's statements. According to defense counsel's testimony at the hearing on motion for new trial, M. H. talked to between five and ten persons about the alleged molestation, including the child's mother, grandmother, police, the forensic interviewer, DFCS personnel, and hospital personnel. Counsel testified that these persons should have been interviewed by counsel or a defense investigator before trial, but that they were not interviewed. Even assuming that Robbins's trial counsel was deficient in failing to interview or attempt to interview

---

[29] (Citation omitted.) *Elrod v. State*, 222 Ga. App. 704, 707 (3) (a) (475 SE2d 710) (1996).

[30] (Citations omitted.) *Benham v. State*, 277 Ga. 516, 517 (591 SE2d 824) (2004).

[31] See, e.g., *Brown v. State*, 225 Ga. App. 49, 49-50 (1) (a) (483 SE2d 318) (1997) (defense counsel's failure to call witness to elicit testimony not consistent with theory of the defense was not ineffective representation).

these persons, Robbins fails to show that there were any discrepancies in the child's pre-trial statements or how his counsel's failure to conduct these interviews otherwise affected the outcome of the trial.[32]

(g) Robbins contends that his trial counsel was ineffective in failing to object to the prosecutor's improper cross-examination of defense expert witness Dr. James Millhouse concerning prior bad acts. Pretermitting whether Robbins's trial counsel was ineffective for this reason, Robbins failed to raise this issue before the trial court. This aspect of his ineffective assistance claim is therefore waived for purposes of appeal.[33]

(h) Robbins further argues that the combined effect of his trial counsel's deficient performance was prejudicial. We disagree. Trial counsel testified that he was not adequately prepared for trial, and thus failed to, among other things, seek to narrow the range of dates for the commission of the crimes set forth in the indictment, hire an expert witness to contest the state's forensic expert, and investigate or attempt to interview certain witnesses. But even accepting that these actions constituted deficient performance, Robbins fails to show that there is a reasonable likelihood that but for his counsel's combined errors the outcome of the trial would have differed. Notably, in contrast to the authorities relied on by Robbins, he fails to show that greater preparation on the part of his trial counsel would have led to the discovery of evidence favorable to the defense[34] or facts allowing the impeachment of the credibility of the witnesses against him.[35] In light of the lack of prejudice demonstrated by Robbins, the trial court did not err in finding that Robbins did not receive ineffective assistance of trial counsel.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

---

[32] *Owens v. State*, 269 Ga. 887, 888-889 (2) (a) (506 SE2d 860) (1998) (even though defense counsel's preparation for trial was deficient, appellant failed to show he was prejudiced by his counsel's deficient performance).

[33] See *Thompkins v. State*, 272 Ga. 835, 836-837 (2) (c) (536 SE2d 747) (2000).

[34] Compare *Goldstein v. State*, 283 Ga. App. 1, 7-8 (3) (b) (640 SE2d 599) (2006) (at hearing on motion for new trial, new defense counsel presented opinion testimony of two expert witnesses who contradicted that of the state's experts; trial counsel testified that it never crossed his mind to consult with medical doctors to determine the validity of opinions expressed by the state's expert witnesses).

[35] *Johnson v. State*, 284 Ga. App. 147, 151 (2) (643 SE2d 556) (2007) (defendant entitled to new trial where, among other things, trial counsel failed to impeach state's witnesses with their prior inconsistent statements to police as well as with evidence demonstrating that the victims had a financial motive for bringing the charges).

DECIDED FEBRUARY 20, 2008 —
RECONSIDERATION DENIED MARCH 18, 2008 —

*Louis M. Turchiarelli*, for appellant.
*Fred A. Lane, Jr., District Attorney, Anthony Volkodav, Jr., Assistant District Attorney*, for appellee.