## A09A1266. KIMBLE v. THE STATE.
## A09A1267. LOURY v. THE STATE.
(687 SE2d 242)

MILLER, Chief Judge.

Following the July 14, 2006 execution of a search warrant, Roy Loury and four other individuals, Travis Kimble, Dedrick Pierce, Rashawn Stewart, and Leola Waters, were indicted for various drug-related offenses. Following a trial of all of the co-defendants but Waters, a Chatham County jury convicted Kimble and Loury of trafficking in cocaine (OCGA § 16-13-31 (a)) and, further, convicted Loury of trafficking in marijuana (OCGA § 16-13-31 (c)), use of a communications facility in committing a felony (OCGA § 16-13-32.3), and two counts of possession of tools for the commission of a crime (OCGA § 16-7-20). Kimble and Loury appeal following the denial of their motions for a new trial.

Both Kimble and Loury challenge the sufficiency of the evidence. Kimble contends that the State presented insufficient evidence to support his conviction of trafficking in cocaine and failed to prove venue beyond a reasonable doubt. Loury claims that the State presented insufficient evidence to convict him of use of a communications facility in committing a felony. Kimble and Loury also argue that the trial court erred in allowing the State to admit hearsay; permitting the State to introduce recordings of phone calls made by a cooperating witness; and denying their *Batson*[1] challenges to two of the State's peremptory strikes. Finally, Loury contends that the trial court erred in denying his motion to suppress and that he received ineffective assistance of counsel at trial. Discerning no error, we affirm.

At trial, Counter Narcotics Team ("CNT") Agent Peter Delatorre of the Savannah-Chatham County Metropolitan Police Department testified that he began investigating 1413 East 57th Street after an informant told him that he was purchasing marijuana from "Roy Youmans," gave him Roy's phone number, and described Roy's residence. The informant's description matched the residence at 1413 East 57th Street. Delatorre testified that the informant called his supplier to order marijuana, but none was available.

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 79) (1986).

On June 20, 2006, Delatorre observed a Ford truck in front of the residence. Delatorre saw the driver carry a large bag toward the truck, get in the vehicle, and drive off. Delatorre followed, but lost the truck as it sped away. Three weeks later, Agent Delatorre observed a man, later identified as Bernard Jones, leave the residence in a Nissan Xterra. Agent Delatorre followed, and when a records check revealed that Jones was driving on a suspended license, officers assisting Delatorre executed a traffic stop. Jones fled on foot into the woods pursued by CNT agents. After apprehending Jones, the agents recovered a large bag of cocaine[2] and a small bag of marijuana among the things that Jones discarded as he ran.

Taken to the CNT office, Jones agreed to "make a phone call to the person he had been purchasing drugs from." At Agent Delatorre's direction, Jones placed a call for marijuana, a recording of which was published to the jury without objection. During the conversation, Jones asked the other individual, "What about . . . tomorrow? I need some [marijuana]." The other individual indicated that he would have some the following afternoon. Jones asked, "So what about the [cocaine]?," and the other individual said that would take a week.

The following day, Jones placed another call, a recording of which was played for the jury, again without objection. At the beginning of the recording, Agent Delatorre stated: "This is July 14th, approximately 1356 [h]ours. We're going to have Bernard Jones contact Roy at 227-0739 for the purchase of marijuana." During the call, the other individual told Jones that he would "have it at 5:00." At some point, the other individual said "Hey, Y'all," and an unidentified female replied, "Hey, Roy." Following Jones' calls, Agent Delatorre sought and obtained a "no knock" search warrant.

CNT agent Malik Khaalis was dispatched to the residence to watch for activity which would trigger the execution of the search warrant. Contemporaneously, CNT agent Eugene Harley was at the Chatham County jail with Jones, who placed further phone calls. A recording of these was played for the jury over defense counsel's hearsay, confrontation clause, and authenticity objections. During the first call, the other individual indicated that someone would be arriving at his house in approximately 15 minutes. Subsequently, the other individual advised Jones that he had just taken a delivery of cocaine.

Outside the residence, Agent Khaalis saw Loury move an SUV

---

[2] The trial court sustained Loury's objection to admission of the cocaine recovered from Jones and the associated drug form and crime lab results on the basis that the evidence was not sufficiently linked to Loury. Agent Delatorre and CNT agent Kevin Coursey were allowed to testify without objection, however, that cocaine was recovered from Jones.

from the yard to the street. Later, Dedrick Pierce drove up and parked. Loury and Pierce spoke briefly, and both men went inside. Minutes later, Pierce returned to his vehicle, retrieved a box and carried it into the house. Travis Kimble and Rashawn Stewart then arrived at the scene. Shortly thereafter SWAT team members and CNT agents executed the search warrant after throwing a flash bang device into the residence. In the kitchen and adjacent to digital scales, agents found 18 pounds of marijuana in a box resembling the one that Pierce carried into the house. Cellular phones and marijuana residue were seized elsewhere in the residence, and Leola Waters was discovered hiding in a closet.

Outside the residence, Agent Coursey saw two hands drop a bag out a window. A man wearing a light-colored shirt then came crashing through the window. Agent Coursey testified that only Kimble presented cuts after the raid and that he was the only person in the house wearing a light shirt that day. The white substance found outside the window later tested positive for 78.8 percent pure cocaine and weighed 490.22 grams.

Agents discovered that the springs and cushions had been torn out of the back seat of a Buick Regal in the carport, creating a "conceal compartment" used to hide contraband. Papers bearing the name "Roy Loury" were found in the car,[3] and, after his apprehension, Loury told Delatorre, "I know who set me up."

Kimble, Loury, Pierce, Stewart and Waters were indicted for various crimes. Specifically, Kimble and Loury were charged with trafficking in cocaine, trafficking in marijuana, and possession of tools for the commission of a crime relating to the digital scales. Loury also was charged with sale of a controlled substance to Jones, use of a communications facility in committing a felony, and possession of tools for the commission of a crime relating to the Regal. All of the defendants except Waters were tried together.[4] After the State rested, the trial court granted Loury's motion for directed verdict on the count against him for sale of a controlled substance to Jones. The jury convicted Kimble of trafficking in cocaine and convicted Loury on the remaining counts against him.[5]

1. Kimble challenges the sufficiency of the evidence supporting

---

[3] Loury's counsel argued persuasively at trial that these records related to Loury's father. For example, one document reflects a date of birth of October 21, 1947, whereas Loury's date of birth is September 3, 1969.

[4] Shortly after trial began, the trial court granted Waters' motion for a mistrial under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

[5] The trial court granted Stewart's motion for directed verdict on the only count against him, trafficking in cocaine. Pierce was convicted of trafficking in marijuana.

YALE LAW LIBRARY

his conviction for trafficking in cocaine and argues that the State failed to prove venue.

(a) "Upon this Court's review of a criminal defendant's challenge to the sufficiency of the evidence supporting a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation, punctuation and emphasis omitted.) *Robinson v. State*, 296 Ga. App. 561, 561-562 (675 SE2d 298) (2009).

"Any person . . . who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine." OCGA § 16-13-31 (a) (1). "Possession of contraband may be joint or exclusive, and actual or constructive. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Punctuation and footnotes omitted.) *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007). Here, the State, through Agent Coursey's testimony and otherwise, presented evidence sufficient to allow the jury to conclude that Kimble was the individual wearing a light-colored shirt seen pushing his hands through a window and dropping a bag of cocaine outside of the house. As such, the jury was authorized to conclude Kimble was in actual possession of 490.22 grams of cocaine, and Kimble's conviction for trafficking in cocaine was supported by sufficient evidence.

(b) "Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed." (Footnote omitted.) *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000). "Like every other material allegation in the indictment, venue must be proved by the prosecution beyond a reasonable doubt." (Punctuation and footnote omitted.) *King v. State*, 271 Ga. App. 384, 385 (1) (609 SE2d 725) (2005). The State may establish venue by use of "both direct and circumstantial evidence." *Jones*, supra, 272 Ga. at 902-903 (2).

Here, Agent Harley testified that he had been employed with the CNT since February 2004 and that his duties involve trying "to identify and go after major drug dealers within the borders of Chatham County." "In light of the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise," the jury was authorized to find that Agent Harley, in participating in the investigation of 1413 East 57th Street, was acting within his jurisdiction. (Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317-318 (4) (565 SE2d 442) (2002). While Agent Harley's testimony, standing alone, may not have been enough to establish venue beyond a reasonable doubt (*Payne v. State*, 290 Ga. App. 589, 590 (2) (660

SE2d 405) (2008)), the State also introduced into evidence, without objection, the search warrant obtained by Agent Delatorre. The search warrant was issued by the Recorder's Court of Chatham County, which has jurisdiction only within the county's borders (Chatham County Code § 10-201), and reflects legal authority to search premises "[i]n Savannah, Chatham County, Georgia, 1413 East 57th Street." We conclude that the search warrant, together with Agent Harley's testimony, provided sufficient evidence of venue. See *Taylor v. State*, 254 Ga. App. 150, 152 (2) (561 SE2d 833) (2002) (search warrant comprised evidence of venue).

2. Loury argues that the evidence presented by the State was insufficient to support his conviction of use of a communications facility in committing a felony.

We review the evidence in the light most favorable to the prosecution (*Robinson*, supra, 296 Ga. App. at 561-562), but "we cannot consider hearsay in determining the sufficiency of the evidence." (Footnote omitted.) *Green v. State*, 277 Ga. App. 867, 868 (1) (627 SE2d 914) (2006).

While Agent Delatorre testified on cross-examination that he was told that he and Jones were calling "Roy," this statement was merely hearsay. Likewise, Agent Delatorre's testimony that another informant previously had told him he purchased drugs from an individual named Roy and that the prior informant had placed a call to that individual was based on hearsay and was without probative value.

The dispositive question thus becomes whether the tapes of phone calls Jones placed to order drugs provided competent evidence that Loury violated OCGA § 16-13-32.3.

> When the contents of a telephone conversation are sought to be used against a particular person, the rule governing admissibility requires that (a) [such person] be identified by competent evidence [as a party to the conversation] when identity is relevant; and (b) the contents of the phone conversation be admissible (e.g., qualify under some exception to the hearsay rule before admission).

(Citation and punctuation omitted.) *Jackson v. State*, 256 Ga. 536, 537 (2) (350 SE2d 428) (1986); *Cannady v. Lamb*, 146 Ga. App. 850 (1) (247 SE2d 500) (1978). Here, identity was relevant, and it was incumbent on the State to make a prima facie showing that Loury was the other participant in the phone calls with Jones. See *Arevalo v. State*, 275 Ga. 392, 395-396 (5) (567 SE2d 303) (2002) (state required to make prima facie showing of authenticity). The State contends that Loury's identity as the other participant was sufficiently established

by circumstantial evidence; the statements of the individual with whom Jones spoke therefore were admissible as admissions of a party opponent (OCGA § 24-3-31); and the entirety of Jones' conversations were admissible pursuant to OCGA § 24-3-38. We agree.

While the State did not present testimony from Jones or anyone else identifying Loury's voice on the recordings[6] (compare *Smith v. State*, 275 Ga. 326, 327 (2) (565 SE2d 453) (2002)), our prior cases recognize that the identity of a speaker may be proved by circumstantial evidence. *Cannady*, supra, 146 Ga. App. at 850 (1) (A); *Tidwell Co. v. Robley Hats*, 125 Ga. App. 102, 108 (5) (186 SE2d 489) (1971); *Myers v. Brown*, 74 Ga. App. 534, 536 (40 SE2d 391) (1946). For example, we have found circumstantial evidence to be sufficient when the speaker's self-identification was coupled with subsequent conduct consistent with the conversation (*Ayers v. John B. Daniel Co.*, 35 Ga. App. 511, 514 (133 SE 878) (1926); see also *Thruway Service City v. Townsend*, 116 Ga. App. 379 (157 SE2d 564) (1967)), or when the evidence showed that the witness called a telephone number listed under the defendant's name, talked to a man who said he would be there in 20 minutes, and, upon seeing the witness later that night, the defendant made a comment tending to corroborate his participation in the earlier conversation. *Stanger v. State*, 102 Ga. App. 561 (1) (116 SE2d 898) (1960).

Among the relevant circumstantial evidence presented by the State are the events prior to Jones' calls. Loury did not dispute at trial that he lived at 1413 East 57th Street with Leola Waters. Agent Delatorre previously observed suspicious activity at the residence, and after Jones left 1413 East 57th Street on July 13, 2006, police apprehended him and recovered a large amount of cocaine he had attempted to discard. Further, it could be inferred from the content of the conversations that Jones had previously used, or attempted to use, the other individual as a source for cocaine. While discussing the "old girl," Jones said, "if I run out, I ain't gonna do nothing but tell you now," but he also advised the other individual, "I don't want you to put me on hold like you did before, now. You had me waiting —." The other individual responded, "That's because I was out of town." Also pertinent is the statement, "Hey, Roy," in the background of Jones' second call.[7] This was a verbal act connecting Loury with the

---

[6] At the beginning of trial, the State advised the trial court that it had not decided whether to call Jones as a witness but that Jones would be available at trial, as the trial court had signed an order to transfer him from Liberty County, where he was incarcerated, to Chatham County. For reasons never explained in the record, Jones was not transferred to Chatham County or made available to testify.

[7] Agent Delatorre's statement that at the beginning of Jones' second call that they were calling "Roy," by contrast, was based on Jones' out-of-court statements and was merely hearsay.

phone number called. See *Weems v. State*, 295 Ga. App. 680, 683-684 (4) (673 SE2d 50) (2009).[8]

Agent Khaalis' observations and evidence gathered during execution of the search warrant are also relevant. The individual with whom Jones spoke indicated that two different individuals would be coming to him with drug deliveries, and Agent Khaalis observed two SUVs drive up to the residence. One of the men who arrived, Pierce, carried a box into the house later found to contain marijuana. Khaalis also saw Kimble enter the house, and the State presented evidence identifying Kimble as the male who later dropped a bag of cocaine out of a window. The amount and type of drugs recovered were approximately the same as that requested by Jones. Additionally, Loury's statement at the scene, "I know who set me up," could be construed as corroborating his participation in the calls. Finally, it could be inferred from both the voice and the contents of the recorded phone conversations that Jones was speaking with another man, and no other males besides Pierce and Kimble were in the house when the search warrant was executed.

Under the unique circumstances here, we conclude that the State presented sufficient circumstantial evidence to establish a prima facie case that Loury participated in the calls with Jones. While the jury was not required to find that Loury was involved in the calls, the recordings were admissible and supported Loury's conviction of use of a communications facility in committing a felony.

3. Kimble and Loury argue that the trial court erred in allowing Agent Delatorre to testify regarding the out-of-court statements of Agent Delatorre's initial informant, Jones, and others because such testimony was hearsay and violated their rights under the confrontation clause of the Sixth Amendment to the United States Constitution. The record shows that on several occasions, counsel for one of the defendants asserted a hearsay objection when the State attempted to elicit Agent Delatorre's testimony regarding what Jones or others had told him, and the trial court sustained the objection. None of the defense counsel attempted to assert a continuing objection, however. As such, Kimble and Loury waived any objection to other instances in which Agent Delatorre testified regarding other individuals' out-of-court statements. *Alford v. State*, 293 Ga. App. 512, 515 (3) (667 SE2d 680) (2008); *Respres v. State*, 244 Ga. App. 689, 691 (3) (536 SE2d 586) (2000).

4. Kimble and Loury further contend that the trial court erred in

---

[8] Although not argued by the State, records recovered from the Buick Regal indicate that the telephone number Jones called was a T-Mobile number assigned to Waters, with whom Loury resided.

STATE LAW LIBRARY

admitting into evidence the recordings of Jones' phone conversations absent proper authentication of Loury's identity. By failing to object, Kimble and Loury waived their right to challenge admission of the conversations recorded by Agent Delatorre. *Penaranda v. State*, 203 Ga. App. 740, 741 (2) (417 SE2d 683) (1992). To the extent Kimble and Loury preserved their objection to the recordings made by Agent Harley, we conclude, as discussed above in Division 2, supra, that the State presented sufficient circumstantial evidence that Loury was the other participant in the calls with Jones.

5. Loury contends that the trial court erred in denying his motion to suppress because Agent Delatorre's search warrant affidavit failed to set forth sufficient facts to support issuance of a "no knock" warrant on the basis that verbal notice would heighten the peril to police officers. Loury also argues that law enforcement used excessive force in throwing a "flash bang" into the house. Loury's suppression motion did not challenge the use of a "flash bang," and Loury has thus waived his right to do so on appeal. *Williams v. State*, 262 Ga. 422, 424 (6) (420 SE2d 301) (1992). We reject Loury's argument that the search warrant affidavit failed to justify a "no knock" provision in the search warrant.

"In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts." (Citation and punctuation omitted.) *Jackson v. State*, 280 Ga. App. 716 (634 SE2d 846) (2006).

"In executing a search warrant, officers are generally required to make a good faith attempt to give verbal notice of their authority and purpose prior to gaining entry by the use of force." *Cook v. State of Ga.*, 255 Ga. App. 578, 579 (565 SE2d 896) (2002), citing OCGA § 17-5-27. The requirement may be excused when police officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile. . . ." *Richards v. Wisconsin*, 520 U. S. 385, 394 (II) (117 SC 1416, 137 LE2d 615) (1997); *Jackson*, supra, 280 Ga. App. at 717-718 (1). The standard for establishing the reasonable suspicion necessary to justify a no-knock entry, as opposed to the standard for establishing probable cause, is "not high." *Richards*, supra, 520 U. S. at 394 (II); *Cook*, supra, 255 Ga. App. at 579.

> [T]he officer does not have to show specific information that would lead officers to conclude that they *would* be harmed if they announced their authority and purpose; it is sufficient if the information supplied by affidavit and sworn testimony would lead to the reasonable conclusion that the

officers *could* be harmed if they announced their authority and purpose.

(Footnote omitted; emphasis in original.) *Cook*, supra, 255 Ga. App. at 579.

In support of his request for a no-knock warrant, Agent Delatorre stated that Loury's criminal history indicated that Loury had previously been convicted of theft by receiving stolen property and possession of marijuana with intent to distribute, and further, that Loury was charged with possession of a firearm by a convicted felon in Clayton County. Agent Delatorre's affidavit also relayed that Jones told him that Loury bragged about how he had a pending weapons charge in Atlanta and was planning to beat it. Especially in light of the pending weapons charge against Loury, the trial court was authorized to conclude that the information in Agent Delatorre's affidavit was sufficient to authorize the no-knock provision in the search warrant. *Cook*, supra, 255 Ga. App. at 579-580 (defendant's prior conviction and arrest on battery charges justified no-knock provision).

6. Kimble and Loury contend that the trial court erred in denying their *Batson* challenges to the prosecutor's peremptory strikes of two African-American jurors. We disagree.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent.

(Citation and punctuation omitted.) *Ludy v. State*, 283 Ga. 322, 324 (2) (658 SE2d 745) (2008). "A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be overruled unless clearly erroneous." *Chandler v. State*, 281 Ga. 712, 715 (3) (642 SE2d 646) (2007). "In addition, a trial court's determination of a *Batson* challenge rests largely upon assessment of the attorney's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Citation and punctuation omitted.) *McKenzie v. State*, 294 Ga. App. 376, 380 (4) (670 SE2d 158) (2008).

Here, the defendants jointly challenged the State's use of six of the seven peremptory strikes it exercised to remove six of the nine African-American jurors in a 32-person jury pool. After determining that the defendants had established a prima facie case of discrimi-

YALE LAW LIBRARY

nation, the prosecutor offered his race-neutral reasons, after which the trial court reinstated one of the jurors, Juror 18, but allowed the other strikes to stand. On appeal, Loury challenges the exclusion of Jurors 26 and 30 from the venire.

With respect to Juror 26, the prosecutor stated that among his reasons for striking her were that she was 30 years old, and he preferred older jurors; she was unmarried and unemployed; and she did not seem to have a lot of ties to the community. The prosecutor further explained that Agent Delatorre had advised him that Juror 26 was rolling her eyes and laughing when he asked questions during voir dire. With respect to Juror 30, the prosecutor maintained that although the juror, who was 27 years old, was younger than he preferred, he was not inclined to strike the juror until he noticed that the juror nodded off during voir dire. Although it acknowledged that it did not observe Juror 30 sleeping, the trial court stated that it would accept "[the prosecutor] at his word," and concluded that falling asleep constituted a valid, race-neutral reason for the strike. In its subsequent orders denying Kimble and Loury's motions for a new trial, the trial court acknowledged that it had allowed the strikes of Jurors 26 and 30 based on "the prosecutor's evaluation of the demeanor of the jurors, which indicated a lack of interest and attentiveness to the proceedings."

The Supreme Court of Georgia has held that a juror's "perceived inattentiveness and . . . mannerisms" constitute valid, nondiscriminatory bases for exercising a peremptory strike. *Reed v. State*, 279 Ga. 81, 82 (2) (610 SE2d 35) (2005); see also *Trice v. State*, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995) ("a strike based upon a prospective juror's lack of responsiveness during voir dire and sleeping is a race-neutral peremptory challenge"). In *Walton v. State*, 224 Ga. App. 249, 250-251 (2) (480 SE2d 284) (1997), this Court affirmed the trial court's denial of a *Batson* challenge to a peremptory strike when the prosecutor stated that she struck the juror because, when the juror served as a foreperson in another of her cases earlier in the week, the juror was not "receptive," fell asleep during her closing argument, and she felt unable to make a connection with the juror. Id. at 250. Here, as in *Watson*, the trial court may not have directly observed the conduct the State cited as the bases for its peremptory strikes. Nonetheless, we conclude here, as in *Watson*, that the trial court was in the best position to evaluate the prosecutor's credibility, and we see no basis to disturb the trial court's credibility determination on appeal.

We do not believe that the United States Supreme Court's decision in *Snyder v. Louisiana*, 552 U. S. 472 (128 SC 1203, 170 LE2d 175) (2008), cited by Loury, requires us to reach a different result. In *Snyder*, a capital murder case, the prosecution offered two

reasons for striking an African-American juror: (1) the juror's nervous demeanor and (2) concern that, due to his student-teaching obligations, the juror might be inclined to convict the defendant of a lesser offense in order to avoid a penalty phase and thereby shorten the trial. Id. at 1208. The trial court upheld the strikes without explanation, and never made a finding on the record regarding the juror's demeanor. Id. at 1208-1209. After finding that the prosecution's second stated reason was pretextual (id. at 1209-1212), the United States Supreme Court, noting, inter alia, the "absence of anything in the record showing that the trial judge credited the claim that [the juror] was nervous," concluded that the record did not show that the prosecution would have struck the juror based on his nervous demeanor alone.

In this case, the trial transcript and the trial court's orders on the new trial motions show that the trial court credited the prosecutor's claim that it was relying on the jurors' demeanor in exercising the State's peremptory strikes. See *People v. Miles*, 55 AD3d 307, 308 (864 NYS2d 28) (2008). The record here also indicates that the prosecutor would have struck the jurors on the basis of demeanor alone. With regard to Juror 26, the prosecutor advised the court that "if [the juror is] sneering at me, or laughing or trying to make fun of my questions, I'm going to strike her, I don't care what color she is or how old she is." As to Juror 30, the prosecutor indicated that despite misgivings about the juror's age, he was inclined to put Juror 30 on the jury until he noticed the juror sleeping.

Loury further argues that the trial court was required to take into account its decision to reseat Juror 18 in evaluating the defendants' *Batson* challenges to the State's use of peremptory strikes on Jurors 26 and 30. We find no indication that the trial court failed to do so. The prosecutor complained that Juror 18 sat with her arms folded and appeared "lightly defensive." It was within the province of the trial court to determine that the conduct of Jurors 26 and 30 was more troubling and that the prosecutor was credible in contending that he struck Jurors 26 and 30 on the basis of their demeanor.

7. Loury argues that the trial court erred in rejecting his claim of ineffective assistance of counsel. "In order to prevail on his claim of ineffective assistance of counsel, [Loury] has the burden to show that his trial counsel's performance was deficient and that but for that deficient performance, there is a reasonable probability that the result of the trial would have been different." (Footnote omitted.) *Fortson v. State*, 280 Ga. 435, 436 (2) (629 SE2d 798) (2006). To establish deficient performance, "[t]he criminal defendant must overcome the strong presumption that trial counsel's conduct falls

within the broad range of reasonable professional conduct." (Citations omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003). In reviewing an ineffective assistance claim, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id. Loury contends that his trial counsel was ineffective in a number of respects. We address his arguments in turn below.

(a) Loury argues that his trial counsel failed to properly file and litigate his motion to suppress. We disagree.

Loury first argues that his trial counsel, in support of his motion to suppress, should have pointed out that in granting the no-knock application, the Recorder's Court judge found not only that giving notice would greatly increase the peril to police officers but also would lead to destruction of evidence to be seized. The search warrant application had alleged only the former. Assuming arguendo that the Recorder's Court judge was not justified in finding a heightened risk of destruction of evidence, the no-knock provision in the warrant was nonetheless valid on the basis that verbal notice would heighten the peril to police. See Division 5, supra. Under the circumstances, the inclusion of a second basis for allowing a no-knock entry did not undermine the validity of the no-knock warrant, and we cannot conclude that Loury's counsel was ineffective in failing to raise or litigate this point. *Reed v. State*, 285 Ga. 64, 67 (6), n. 2 (673 SE2d 246) (2009) (failure to make additional arguments for suppression of videotaped statement could not have amounted to ineffective assistance when objections would have been futile).

Loury next argues that his trial counsel was deficient in failing to cite authorities other than *Richards v. Wisconsin*, supra, in support of his motion to suppress. *Richards* sets forth the governing standard for the legality of a no-knock entry, and we see no basis for concluding that trial counsel's reliance on this case was unreasonable.

Finally, Loury contends that his trial counsel should have moved to suppress evidence recovered during execution of the search warrant on the ground that law enforcement's use of a "flash bang" was unreasonable. Assuming Loury could establish that law enforcement acted unreasonably, he cannot show that suppression of evidence would have been required because there is no causal link between law enforcement's alleged unlawful conduct and the evidence obtained during execution of the search warrant.[9] See *United*

---

[9] Loury suggests in his brief that using a "flash bang" was standard operating procedure, but there is no evidence in the record supporting this contention.

*States v. Ankeny*, 502 F3d 829, 838 (9th Cir. 2007) (affirming denial of motion to suppress based on use of flash bangs); *United States v. Morris*, 349 F3d 1009, 1013 (7th Cir. 2003) (same).

(b) Loury contends that his trial counsel was deficient in failing to object to admission of all of the recordings of Jones' calls. Given our conclusion that the recordings were admissible, we disagree. See Division 2, supra.

(c) Loury argues that his trial counsel should have requested redaction of the portion of Jones' second call in which an unidentified person in the background stated, "Hey, Roy." For reasons set forth in Division 2, supra, we disagree.

(d) Loury argues that his trial counsel was ineffective in inducing the State to introduce into evidence the documents recovered from the Buick Regal. We are not persuaded.

The State did not attempt to introduce the documents from the Regal into evidence until after Loury's counsel, on cross-examination, challenged the agent who discovered the Regal to cite any document or piece of evidence linking Loury to the car. At the motion for new trial hearing, Loury's counsel admitted that he asked "one question too many" during his cross-examination of the agent. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Footnote omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). Notwithstanding Loury's counsel's concession that he "overreach[ed]" during cross-examination, we cannot conclude that his performance was deficient.

Loury argues that his counsel's line of questioning revealed a failure to investigate. While we agree that "reasonable professional judgment requires proper investigation," Loury has not established that his trial counsel's cross-examination strategy resulted from inadequate investigation. (Citation omitted.) *Turpin v. Helmeci*, 271 Ga. 224, 226 (518 SE2d 887) (1999). Before the State was permitted to introduce the papers recovered from the Regal, Loury's counsel objected to admission of the documents on the ground that they had not been provided in discovery. The prosecutor responded that the documents had been referenced on the search warrant return and evidence submission forms provided in discovery. While the return and evidence forms indicate that certain financial records and paperwork were recovered during execution of the search warrant, they did not indicate that documents had been recovered from the Regal. Agent Delatorre's report, provided in discovery, stated that agents "seized items from the residence such as financial records and other types of paperwork," and did not mention that documents were found in the Regal. Under the circumstances, Loury has not

YALE LAW LIBRARY

established that, even if his counsel had previously inspected the paperwork law enforcement recovered, his counsel would have learned that the documents were recovered from the Regal. As such, we cannot conclude that Loury received ineffective assistance of counsel.

(e) Loury argues that his trial counsel was ineffective because he failed to object to the introduction of hearsay, particularly during the State's examination of Agent Delatorre, and elicited further hearsay from Agent Delatorre during cross-examination. Loury further claims that his rights under the confrontation clause were violated as a result.

Agent Delatorre was permitted to offer numerous out-of-court statements of his first informant and Jones implicating Loury as a source for drugs. Further, on cross-examination, Loury's counsel elicited Agent Delatorre's testimony that, "I was told we were calling Roy Loury." We agree that Agent Delatorre's testimony regarding what Jones or his other informant told him constituted inadmissible hearsay and reject the State's argument that Agent Delatorre's testimony was admissible as original evidence explaining law enforcement's motives and conduct under OCGA § 24-3-2. See *Brown v. State*, 274 Ga. 31, 36-37 (2) (549 SE2d 107) (2001); *Render v. State*, 267 Ga. 848, 849 (2) (483 SE2d 570) (1997). We also agree with Loury that admission of Jones' out-of-court custodial statements violated Loury's rights under the confrontation clause. See *Gay v. State*, 279 Ga. 180, 181-182 (2) (611 SE2d 31) (2005). Loury's trial counsel acknowledged that he had no strategic reason for failing to assert hearsay objections. As such, we agree that Loury has established deficient performance. *Grindle v. State*, 299 Ga. App. 412, 415 (1) (a) (683 SE2d 72) (2009); *Rayshad v. State*, 295 Ga. App. 29, 36-39 (2) (a) (670 SE2d 849) (2008). Nonetheless, we cannot conclude that Loury has proved that he was prejudiced as a result of his trial counsel's errors, given the overwhelming evidence against him, including the phone conversations and the evidence gathered during the surveillance of the house and execution of the search warrant.

8. Although not enumerated separately as error, Kimble also contends that his trial counsel was ineffective in failing to object to admission of all of the recordings of Jones' phone conversations. We reject Kimble's argument for the reasons set forth in Division 7 (b), supra.

Given the foregoing, Kimble and Loury's convictions are affirmed.

*Judgments affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 20, 2009 — 

*David M. Burns, Jr.*, for appellant (case no. A09A1266).
*Steven L. Sparger*, for appellant (case no. A09A1267).
*Larry Chisolm, District Attorney, Russell B. Mabrey, Jr., Jeffrey S. Hendrix, Assistant District Attorneys*, for appellee.