**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 10, 2015**

# In the Court of Appeals of Georgia

A14A1834. THE STATE v. LOPEZ-CHAVEZ.

McMILLIAN, Judge.

Pursuant to OCGA § 5-7-1 (a) (4), the State appeals the grant of Alexandra E. Lopez-Chavez's motion to suppress evidence of contraband seized during the execution of a "no-knock" search warrant at her home.[1] Because the trial court properly concluded that the no-knock provision was unsupported by particular facts and circumstances set out in the warrant and the record does not disclose any exigent circumstances authorizing an unannounced entry into the premises, we affirm.

---

[1] In addition to Lopez-Chavez, Ezequiel Chavez-Segovia, Ranulfo Vladovinos-Enriquez, Huber Romero-Gonzalez a/k/a Alfredo Reyes-Valdez, and Luis Emillio Figueroa were also charged with various drug crimes based on contraband seized during the search.

The record shows that on May 22, 2013, Investigator Marquis Hagans with the Columbia County Sheriff's Office applied for and obtained a warrant to search a residence and curtilage located at 484 White Road in Columbia County, Georgia, for the purpose of locating marijuana, drug paraphernalia, financial records, electronic devices and other evidence that might support a marijuana distribution operation. The affidavit presented to the magistrate court recited that in 2006, a sheriff's department investigator received information that people were selling guns and marijuana from 484 White Road, and in 2009, another investigator received information that Julian Lopez Chavez was transporting marijuana from Texas to the White Road address. Four years later, on May 21, 2013, a trash pull was conducted from 484 White Road, and a pill bottle was found. During surveillance the next day, a gray van was observed arriving at the residence, a large box was loaded into the van, and the van left. A short time later, a red Cadillac arrived at 484 White Road, and the driver, later identified as Jeffery Martin, retrieved an item from the passenger side of the vehicle, walked to the right side of the residence, and returned with a white plastic bag. The vehicle was stopped for a seatbelt violation, and a search was conducted after a strong odor of marijuana was detected emitting from the vehicle. The search of the vehicle yielded approximately one pound of marijuana.

In addition, the warrant contained a request to allow officers to execute the warrant without giving verbal notice of their presence "since [forewarning] would increase the risk of injury to the executing officers and possible destruction of evidence."[2]

During the motion to suppress hearing, which occurred over the course of two days,[3] Investigator Hagans testified that police had been conducting a surveillance operation of the premises based on information that had been received from other law enforcement agencies concerning drug activity occurring on the premises; however, this information was not included in the warrant, and Hagans testified that he did not inform the magistrate that other law enforcement agencies were also suspicious of possible drug activity on the premises.

Hagans also testified that Jeffrey Martin was unknown to local Columbia County law enforcement prior to his arrest on May 22, 2013. Further, Martin was not actually observed going into the house located on the premises, and there is no

---

[2] The warrant included no other additional facts to support the no-knock provision.

[3] The hearing was continued to allow additional evidence to be presented on the validity of the execution of the warrant, in particular whether the no-knock provision was justified.

indication that Martin provided the officers any information about a drug or weapons distribution operation being carried out on the premises, other than the information he provided about buying the marijuana which was seized when he was stopped.[4]

Hagans also testified concerning the 2006 and 2009 calls to police. Hagans acknowledged that he had not had any interactions with either of the individuals who made these calls, he did not have any information concerning their reliability, and he did not provide the magistrate with any information concerning the reliability of these individuals.[5] Hagans further testified that at the time he presented the affidavit, he did not have any additional information concerning weapons on the premises, and he did not recall providing any information to the magistrate that was not included in the affidavit.

Concerning execution of the warrant, testimony was presented that officers entered the residence with their weapons drawn in a SWAT type formation after one of the officers kicked in the door. Although the officers repeatedly identified

---

[4] Martin told officers he went to White Road to buy marijuana after receiving a call from a person going by the name of Antonio Mendez, from whom he had purchased smaller amounts of marijuana at another location in the past, and that Mendez was waiting for him by the road when he got there.

[5] Testimony was presented at the hearing that the 2006 and 2009 callers were anonymous, and that the information the callers provided was never verified.

4

themselves and announced their presence after they were inside the house, they did nothing to signal their presence prior to entering the residence.

Following the hearing, the trial court found probable cause to support the issuance of the warrant, but determined the request for a no-knock entry was based on generalizations and stale, unsubstantiated information, unsupported by "any credible particularized facts and circumstances." Accordingly, the trial court found the warrant was illegally executed and suppressed all evidence seized as a result of the search. The State challenges the trial court's findings concerning the no-knock provision, arguing that the averments in the affidavit were sufficient to justify the no-knock entry and that even if they were not, the evidence should not have been suppressed for other reasons.

When we review the grant or denial of a motion to suppress, we apply the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law to undisputed facts is subject to de novo review. However, in cases of this type, we also keep in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court. *State v. Palmer*, 285 Ga. 75,

5

78 (673 SE2d 2137) (2009); *State v. Barnett*, 314 Ga. App. 17, 18 (722 SE2d 865) (2012).

In reviewing whether a no-knock provision was properly included in a warrant, we start with OCGA § 17-5-27, which provides that police must make a good faith attempt to verbally announce their authority and purpose before entering a building to execute a search warrant. But where the State demonstrates a reasonable suspicion that knocking and announcing the officers' presence would be dangerous or futile under the particular circumstances, or that it would hinder the effective investigation of the crime by, for example, allowing the destruction of evidence, a no-knock entry may be authorized. *State v. Cash*, 316 Ga. App. 324, 326 (728 SE2d 918) (2012). "Nonetheless, the standard for establishing the reasonable suspicion necessary to justify a no-knock entry, as opposed to the standard for establishing probable cause, is not high." (Citation and punctuation omitted.) *Braun v. State*, 324 Ga. App. 242, 243 (1) (747 SE2d 872) (2013). Importantly here, "[t]he staleness of specific evidence supplied is a factor to be considered by the trial court; the exact date is not the focus of the inquiry, but rather whether factual statements in the affidavit are sufficient to create a reasonable belief that the information offered in the affidavit will be present

at the time the warrant is executed." *Barnett,* 314 Ga. App. at 19. With these tenets in mind, we turn to the State's arguments on appeal.

1. (a) The State first argues that the magistrate was authorized to reasonably conclude that a no-knock intrusion was warranted because evidence showing the existence of co-conspirators in a large-scale drug operation, such as financial papers, electronic equipment, computers and cell phones, could have been easily destroyed if officers executing the warrant had announced their presence before entering the residence. This contention is unavailing for several reasons. Most significantly, the State did not make this argument before the trial court and thus has waived the right to make this assertion on appeal. *State v. McCarthy*, 288 Ga. App. 426, 428-429 (2) (654 SE2d 239) (2007).

And, in any event, this argument fails on the merits. The affidavit merely contained a generalized statement that unspecified evidence might be destroyed if the police announced their presence before entering, and it does not appear that the officer who presented the affidavit pointed to any specific items or data that might be destroyed if the no-knock intrusion was not allowed. Thus, the magistrate was not provided with underlying details that would have allowed him to evaluate whether these conclusions were based on specific facts or whether they were merely

7

boilerplate based on speculation and presumptions. *Willoughby v. State*, 315 Ga. App. 401, 404 (727 SE2d 194) (2012). See *Barnett*, 314 Ga. App. at 18 ("[A] no-knock provision is permissible only when based on a neutral evaluation of each case's particular facts and circumstances, not on blanket provisions based on generalized experience."); *Braun*, 324 Ga. App. at 243; ("Blanket provisions based on the generalized experience of the officer seeking the warrant do not authorize no-knock provisions. An affidavit based on the general ease of destroying drug evidence and the officer's experience is also insufficient, as is the mere fact that the warrant is being issued in a felony drug investigation.") (citation omitted). The generalized statement contained in the affidavit was insufficient to authorize a no-knock entry, and, accordingly, the State's first argument provides no basis for reversal.

(b) The State also argues that the request for the no-knock entry was justified based on the officers' reasonable suspicion that knocking and announcing their presence could expose them to undue harm at the hands of dangerous drug dealers. The State is correct that a no-knock provision in a warrant is sufficiently supported "if the information supplied by affidavit and sworn testimony would lead to the reasonable conclusion that the officers *could* be harmed if they announced their authority and purpose." *Kimble*, 301 Ga. App. 237, 244-245 (5) (687 SE2d 242)

8

(2009). *Braun*, 324 Ga. App. at 244 (1) (b). But the only recitation in the affidavit concerning weapons on the premises was based on an obviously stale, unverified tip that officers received seven years earlier. There was no indication that weapons had been observed on the premises since that time, including no evidence that weapons had been observed by officers conducting surveillance of the premises or that Martin had observed weapons when he bought drugs on or near the premises the day the warrant was executed. Further, there was no evidence that any persons suspected to be on the premises had a previous history of violence or that they even possessed a firearm such that they might be expected to use weapons against the officers conducting the search. Thus, it appears the request for a no-knock entry was solely based on a generalized experience or belief that weapons are associated with the drug trade, and the trial court properly determined that the no-knock provision was not justified on this basis. *Cash*, 316 Ga. App. at 327; *Barnett*, 314 Ga. App. at 19; *Adams v. State*, 201 Ga. App. 12, 14 (3) (410 SE2d 139) (1991). Cf. *Braun*, 324 Ga. App. at 243-244 (1) (a (prior arrests based on probable cause for battery and possession of a firearm formed sufficient basis to conclude defendant was a man of violence who might harm officers when they entered the home); *Kimble*, 301 Ga. App. at 244-245 (5) (no-knock provision appropriate because the defendant had a

9

pending weapons charge and prior drug and theft convictions); *Cook v. State*, 255 Ga. App. 578, 579 (565 SE2d 896) (2002) (no-knock provision justified because accused had been convicted of battery and a prior drug offense).

2. Lastly, the State contends that the trial court should have upheld the search even if the no-knock provision was unauthorized because the warrant was supported by probable cause. However, the cases cited by the State do not stand for this broad proposition. For instance, in *State v. Ballew,* 290 Ga. App. 751, 754 (2) (660 SE2d 732) (2008), we declined to address the viability of the no-knock provision because the officers actually announced their presence and thus they were authorized by OCGA § 17-5-27 to use force to enter a padlocked door after receiving no response. And in *Adams v. State*, 201 Ga. App. at 14 (3), also cited by the State, we upheld the trial court's refusal to suppress the evidence seized during the search despite the erroneous inclusion of a no-knock provision in the warrant because the officers entered the premises based on a good faith belief that the no-knock entry was justified due to the peril created by a dangerous dog. Id. Moreover, we reject the State's contention that a briefing with officers prior to the search in which officers were informed that there were possibly weapons in the house supported that the officers had a reasonable belief that they could be harmed when nothing in the record shows

10

that the statements were based on anything other than the generalized belief that weapons are used in the drug trade.

Finally, the State repeatedly requests the Court to consider the results of the search to justify failing to knock and announce the officers' entry. We take this opportunity to make it clear that in reviewing whether a no-knock provision in a warrant is justified, the focus is on the sworn testimony and evidence presented to the judge who issued the warrant. *Jones v. State*, 126 Ga. App. 841, 845 (192 SE2d 171) (1972) (sufficiency of the affidavit supporting a warrant must be determined at the time the warrant was issued, and any deficiency in the affidavit cannot be supplied by facts discovered during the search). Allowing the ends to justify the means would undermine the directive in OCGA § 17-5-27 that police must make a good faith effort to knock and announce their presence before executing a search warrant. Accordingly, for the reasons stated above, the trial court's order granting Lopez-Chavez's motion to suppress must be affirmed.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*